SMAILS et al. v. O'MALLEY, Collector of Internal Revenue for District of Nebraska.

No. 12042.

Circuit Court of Appeals, Eighth Circuit.

April 23, 1942.

---

[11] M. Salimoff & Co. v. Standard Oil Co., 262 N.Y. 220, 186 N.E. 679, 89 A.L.R. 345.

½)

Alfred C. Munger, of Omaha, Neb. (Varro H. Rhodes, of Omaha, Neb., and A. R. Foss and KixMiller, Baar & Morris, all of Chicago, Ill., on the brief), for appellants.

J. E. Garvey, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J.

Louis Monarch, Sp. Asst. to Atty. Gen., and Joseph T. Votava, U. S. Atty., of Omaha, Neb., on the brief), for appellee.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

This case arises under § 302(a) and (c) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Code, § 811(a, c). The action was commenced by the appellants in the district court to recover from the Collector of Internal Revenue the sum of $16,008.43 paid on account of a deficiency in the estate taxes assessed by the Commissioner of Internal Revenue against the estate of Emma Allen, deceased. The deficiency was based upon the inclusion in the gross estate of the value of property found by the Commissioner to have been transferred to the appellant taxpayers by the decedent in contemplation of death. A claim for refund having been denied this action was instituted and recovery sought on the ground that the transfers were not made in contemplation of death. The case was tried to a jury. At the conclusion of the evidence a motion for a directed verdict was overruled and the jury brought in a special verdict: "That the gifts from Emma Allen to her nieces, the three plaintiffs herein, on May 1, 1930, were made in contemplation of death."

The plaintiffs filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. The motion was overruled and judgment was entered on the verdict for the defendant.

The appellants complain that the court erred (1) in overruling the motion for a directed verdict; (2) in failing to rule on the alternative motion for a new trial; (3) in the admission of evidence; and (4) in the instructions to the jury.

The contention that the court should have directed a verdict for the plaintiffs presents the question whether the evidence is sufficient to support the verdict of the jury. In reviewing the case to determine this problem we must be guided by certain well-settled rules.

One seeking recovery of a tax has the burden of proof that the property was not transferred in contemplation of death. Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184; Oliver v. Bell, 3 Cir., 103 F.2d 760. On a motion for a directed verdict by any party the court is required to consider the substantial evidence and all the inferences reasonably to be drawn therefrom in the light most favorable to his adversary, and if fair-minded men may draw different conclusions from such evidence the question is one of fact for the jury and not one of law for the court. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Brinegar v. Green, 8 Cir., 117 F.2d 316, 319; Adams v. Barron G. Collier, Inc., 8 Cir., 73 F.2d 975, 977. A finding of fact by the trier of facts, if based upon substantial evidence, is not to be set aside upon appeal even if upon examination of the evidence the court might draw a different inference. Palmer v. Commissioner, 302 U.S. 63, 70, 58 S.Ct. 67, 82 L.Ed. 50; United States v. Gamble-Skogmo, Inc., 8 Cir., 91 F.2d 372. If the evidence is so overwhelmingly on one side as to leave no doubt what the fact is, the court should direct a verdict. Gunning v. Cooley, supra; Southern Pacific Company v. Pool, 160 U.S. 438, 440, 16 S.Ct. 338, 40 L.Ed. 485; Coen v. American Surety Co., 8 Cir., 120 F.2d 393, 397.

The evidentiary facts are not in dispute. On May 1, 1930, Emma Allen made a gift of bonds and stocks of the value of $131,925.63 to her three nieces, the plaintiffs, in equal shares. The transfer of the property was made by delivery of the bonds and by proper transfer of the stocks at the safe deposit vaults of the bank where the securities were kept. On the morning of the same day Miss Allen requested the husband of appellant Mabel Allen Smails to paste a document which she had prepared on the inside of the front cover of her personal account book at the office of the family investment corporation. This was done. The document in Miss Allen's handwriting, omitting the list of securities given to each niece, is as follows:

"To my nieces:—
 "Mabel Allen Smails,
 "Jacy Allen Dunham and
 "Katherine Allen.
 "Being in good health but not wanting to be burdened looking after business matters and having other income sufficient for my needs, I hereby, give to each of you the following bonds and stocks listed under your names.
 * * * * *
 "My own free will and gift, from your Aunt
 "Emma Allen".

Miss Allen was born July 1, 1853. She was never married. On May 1, 1930, she was 76 years and 10 months of age. She died suddenly of coronary occlusion on February 14, 1933, two years, nine months and fourteen days after the date of the transfers. At the time the gifts were made she was in good health for one of her age, and mentally alert. With few exceptions she had always had good health. Her habits were regular. She took walks in the early morning, read the papers, knitted, did church work, traveled some, and interested herself in the affairs of the family.

There is no evidence that she ever discussed tax matters with any one. She discussed the proper way to make the gifts with the accountant who took care of her tax matters, but did not discuss the subject of estate taxes with him. Prior to the transfers involved her property was in the form of tax exempt securities. She had not been required to file an income tax return for many years before her death.

The taxpayers are the only children of Emma Allen's brothers Arthur and Oscar Allen. She always regarded these nieces as if they were her own children and as the natural objects of her bounty. For many years she made her home with her brother Arthur. She often gave the children small presents. In January, 1923, she gave outright to the three nieces the sum of $150,000 in equal shares.

On July 6, 1927, she created a revocable trust in the amount of $300,000 for the benefit of the three taxpayer nieces, retaining the income of the trust fund for life, and providing that upon her death the corpus of the trust should be divided among the three nieces in equal shares.

On July 17, 1927, she executed her last will and testament. Except for a bequest of $1,000 she bequeathed her entire estate to her three nieces in equal shares. She named her two brothers as executors.

Her brother Oscar Allen died on March 31, 1930, at the age of 72 years. At that time her brother Arthur was 69 years of age and in poor health.

On April 9, 1930, she wrote, signed and attached to her will the following statement: "If at my death my brother, Arthur Allen, should not be able to act as administrator of my will I want my nephew, W. H. Smails, to act as administrator; and if he should not be able my niece, Mabel Allen Smails, to fill the place. No bond required."

The financial condition of the three nieces at the time the transfers were made on May 1, 1930, is shown in the evidence. Mabel Allen Smails received securities of the value of $145,000 from her father Arthur Allen on October 1, 1922, and $50,000 from Emma Allen in January, 1923. On July 6, 1927, her father created a $250,000 trust for the benefit of her mother and herself. Jacy Allen Dunham Busch received $50,000 in securities from Emma Allen in January, 1923, $50,000 from her father Oscar Allen in February, 1927, and under the will of her father who died March 31, 1930, she received $63,429.34. Katherine Allen Wadleigh, daughter of Oscar Allen, received from her aunt and her father gifts in the same amounts and at the same times as those given to her sister Jacy Allen Dunham Busch.

After the gifts were made on May 1, 1930, Emma Allen received an income, largely from the trust fund created in 1927, of more than $12,000 a year, and her living expenses would not average $100 a month. At the time of her death on February 14, 1933, there came into the hands of the executor cash, postal savings certificates, jewelry and personal effects aggregating $12,027.46. For estate tax purposes the executor returned the gross sum of $292,636.41. In this calculation the executor included the value of the trust fund and excluded the $150,000 of gifts made to the appellants in 1923 and the gifts of May 1, 1930.

Because of the contentions on appeal it is necessary to decide by what law the sufficiency of the evidence must be determined. The law is that "Where there are no exceptions to a statement as to the law in the charge, * * * such statement becomes the law of the case for purposes of an appeal." F. W. Woolworth Co. v. Carriker, 8 Cir., 107 F.2d 689, 692; Aetna Life Ins. Co. v. McAdoo, 8 Cir., 115 F.2d 369, 370. This situation calls for the consideration at this point of appellants' objections to the instructions. Upon the issue of contemplation of death the instructions to the jury are in the exact language of the opinion of the Supreme Court in United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867. Appellants contend that the court erred in so instructing the jury. The contention is peculiarly without merit in this instance because the identical instructions complained of here were given in the form and

language requested by appellants and no exception was taken to them in the lower court. Rule 51 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Exception cannot well be taken to the law as declared by the Supreme Court; and, assuming that it would be preferable to charge the jury in a different form, a party cannot be heard to complain in an appellate court of an error which he invited in the lower court in a civil case. "Such errors, if any, are to be imputed to the party making the request rather than to the court." Schools v. Risley, 10 Wall. 91, 77 U.S. 91, 114, 19 L.Ed. 850; Maxwell Land-Grant Co. v. Dawson, 151 U.S. 586, 14 S.Ct. 458, 38 L.Ed. 279; Bracken v. Union Pacific Ry. Co., 8 Cir., 75 F. 347. The sufficiency of the evidence must, therefore, be tested by the law stated in the instructions.

Section 302 of the statute involved, supra, provides that for tax purposes, "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, * * * wherever situated, * * * (c) To the extent of any interest therein of which the decedent has at any time made a transfer, * * * in contemplation of * * * death * * *."

The sole issue submitted to the jury was whether the gifts made by Emma Allen to her three nieces on May 1, 1930, were made by her in contemplation of death. The court instructed the jury (1) that the burden was on the plaintiffs to establish by a preponderance of the evidence that the gifts were not made in contemplation of death; (2) that the test is to be found in the dominant motive of the decedent at the time the gifts were made; (a) that death is "contemplated" where the motive which induces the transfer is of the sort which leads to testamentary disposition; that the purpose of the law is to reach substitutes for testamentary dispositions; and (b) that the statute does not embrace gifts inter vivos found to be related to purposes associated with life, rather than with the distribution of property in anticipation of death.

Among the facts to be considered by the jury in applying the test and in determining motive the court mentioned (1) the age of the decedent, (2) the condition of her health, (3) whether the donees were the natural objects of her bounty, (4) whether the distribution was made to relieve the donor of the cares of management or that the donees might experience the responsibilities of business under her guidance, or (5) to have the objects of the donor's bounty independently established with competencies of their own, or (6) to discharge moral obligations.

The court warned the jury (1) that the phrase "in contemplation of death" does not refer to the general expectation of death which all entertain; (2) that the statute refers to contemplation of death, not necessarily to contemplation of imminent death; and (3) that old age may give premonitions and promptings independent of mortal disease, yet age cannot in itself be regarded as a decisive test.

There is no circumstance pointed to in the record to indicate that the jury ignored the instructions of the court or that the jurors did not conscientiously endeavor to apply the tests prescribed by the court to the evidence. In reviewing the record it is apparent that there may be reasonable persons who would not agree with the jury on the question of the preponderance of the evidence; but we are satisfied that there is substantial evidence to support the verdict. Decision depends upon possible inferences. On May 1, 1930, the decedent was nearly 77 years of age. Her three nieces were the natural objects of her bounty. The gifts made by her on that day together with the trust fund created by her for their benefit in 1927 and the provisions of her will gave to them practically all of her estate. Since the donor was in good health on May 1, 1930, and by a written declaration said that she did not want to be burdened "looking after business matters", appellants contend that the inference is compelled that she must be held not to have made the gifts in contemplation of death. But these same facts, when considered in connection with other facts, may legitimately give rise to a contrary inference. The donees were not personally engaged in business. There was no suggestion that she desired to train them in business experience under her guidance. One of her two brothers had recently died leading her to write a codicil to her will. Her other brother was in poor health. All of these facts together, the appellee contends, support the inference that the gifts were made in contemplation of death, that is, they were substitutes for testamentary dispositions. This conclusion is evidenced to some extent by the fact that all of the

property included in the gifts of May 1, 1930, was given to the same nieces in the same proportions by the provisions of the decedent's will. To any one familar with the experiences of life such a conclusion will not appear unreasonable. This being true, the court on appeal cannot say that the verdict is without any substantial foundation. Especially is this true in the exercise of the court's duty to consider the evidence and the inferences to be drawn therefrom in the light most favorable to the contentions of the appellee. "The appellate court cannot pass upon the weight of evidence." McCaughn, Collector, v. Real Estate Co., 297 U.S. 606, 608, 56 S.Ct. 604, 605, 80 L.Ed. 879. It can only say whether as a matter of law there is any substantial evidence to support the finding of the jury. Colorado National Bank v. Commissioner, 305 U.S. 23, 25, 59 S.Ct. 48, 83 L.Ed. 20.

It is next contended that the motion for judgment notwithstanding the verdict and the alternative motion for a new trial must both be ruled upon by the court and that the court failed to rule upon the alternative motion. The short answer to this contention is that the court expressly overruled both branches of the motion. In the court's opinion it is stated: " 'The Motion to set aside Verdict and to have judgment entered in accordance with plaintiffs' Motion for a Directed Verdict, or in the alternate for a New Trial' of the plaintiffs will be overruled." And in the final judgment it is recited that "Plaintiffs' motion to set aside the verdict for defendant and to have judgment entered for plaintiffs in accordance with plaintiffs' motion for a directed verdict, and plaintiffs' motion in the alternative for a new trial having been overruled herein March 24, 1941, It Is", etc. From these entries it is clear that the court considered and ruled upon both parts of the motion.

It is argued that evidence as to plaintiffs' wealth was not material, caused prejudice to influence the verdict, and was erroneously admitted over plaintiffs' objections. On this point it is sufficient to observe that the sums given to the plaintiffs by the decedent at various times and by decedent's will were introduced in evidence without objection. The other items of their property were donated to them by their parents. This evidence was material on the issue of whether the gifts in question were related to any purposes associated with life, and whether a controlling motive was to have appellants "independently established with competencies of their own." The gifts anticipated the bequests in decedent's will. Had plaintiffs been in need of financial assistance it might have been persuasively argued that the gifts were prompted by such present needs. The admission of the evidence objected to was without prejudice.

The judgment appealed from is affirmed.