ESTATE OF EDWARD J. MORRIS, DECEASED, JOHN C. EVELIUS, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Morris v. Commissioner
Docket No. 9440-77.
United States Tax Court
T.C. Memo 1979-65; 1979 Tax Ct. Memo LEXIS 464; 38 T.C.M. (CCH) 283; T.C.M. (RIA) 79065; February 27, 1979, Filed Joseph P. McCurdy, Jr., for the petitioner. Susan B. Watson, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a Federal estate tax deficiency of $ 3,425.87 in the Estate of Edward J. Morris, Deceased. The only issue for decision is whether gifts made by the decedent in the amount of $ 78,168.33, or any portion thereof, within three years of his death to three nephews, a cousin, the cousin's widow and the cousin's children were in contemplation of death and therefore properly includable in the decedent's gross estate under section 2035, Internal Revenue Code.[1]
*465 FINDINGS OF FACT Some of the facts have been stipulated and are so found. John C. Evelius (petitioner), the personal representative of the Estate of Edward J. Morris, Deceased, resided in Baltimore, Maryland, when the petition was filed in this case. Edward J. Morris (decedent) died on December 30, 1973, at the age of 75. He was a bachelor who maintained a close and personal relationship with his sister-in-law, Mrs. Frank K. Morris, and her children, and with his cousin, Francis X. Gallagher, and his family. He lived alone in an apartment where he took care of himself. The decedent was president and the principal stockholder of Morris Engineering Co., Inc., a corporation which he established in 1947. He regarded his work as a major source of satisfaction in his life and he continued to work until his last illness. He was alert and took an active part in the corporation's business operations. The company installed industrial and commercial heating equipment, a service which required the decedent to personally visit the site of a construction job when a difficult problem arose.
On May 29, 1971, the decedent executed a will in which he divided the balance of his estate *466 into four equal shares, one share to his cousin, Francis X. Gallagher, and the remaining three shares to Francis H. Morris, Edward J. Morris, and Eugene Joseph Morris, his nephews. On June 7, 1971, the decedent was admitted to Mercy Hospital in Baltimore for a seven-day stay. His condition was diagnosed by his physician, Dr. S. Edwin Muller, as cerebral thrombosis with partial left hemiplegia. On August 11, 1971, the decedent executed a deed of trust for his nephews which amounted to $ 31,500.On the say day he made a gift of $ 10,500 to his cousin, Gallagher. He also executed a new will which took into consideration the trust created on that day. Francis X. Gallagher died on February 11, 1972. The decedent transferred $ 30,000 in bonds and cash to the Morris trust on March 3, 1972. He then created a trust for Mary K. Gallagher, the widow of Francis, and her children, and made a gift of $ 10,000 to the Gallagher trust. On March 22, 1972, the decedent executed a first codicil to his last will and testament of August 11, 1971. The codicil provided that 25 percent of his residual estate was to pass to the trust which was created on March 22, 1972, for Mary K. Gallagher *467 and her children. The decedent was again admitted to the hospital on May 30, 1972, with another cerebral thrombosis. In January 1973, the decedent transferred a 1973 station wagon to Mary K. Gallagher. The automobile had a value of $ 3,845 at the date of the gift. On March 28, 1973, the decedent executed a new will which incorporated the aspects of the will written on August 11, 1971, and the codicil of March 22, 1972. In item 8 of that will, he directed that both trusts, the Morris trust and the Gallagher trust, were to be taken into consideration in the ultimate disposition of the entire estate. To this effect, he provided that, for purposes of computing the disposition of his residuary estate, the amounts transferred during his life to the two trusts be added to the value of the estate and that the resulting sum be referred to as the "adjusted residue." On December 12, 1973, the decedent was again admitted to Mercy Hospital because of shortness of breath.He died on December 30, 1973. The final diagnosis by Dr. Michael F. Plott was: (a) Chronic obstructive pulmonary disease with bronchitis and probable bronchopneumonia. (b) Pulmonary insufficiency. (c) Pituitary *468 tumor. (d) Arteriosclerotic heart disease by history. Dr. Frank Kailer Morris, the brother of the decedent and the father of Francis H. Morris, Edward J. Morris, and Eugene J. Morris, died on November 8, 1967, leaving a gross estate of $ 543,340.86. Dr. Morris executed a will on February 10, 1966, in which he named Margaret Meade Morris and the decedent, Edward Morris, as the executors. Dr. Frank Kailer Morris left $ 85,731.46 in cash in banks. He also left $ 128,308.08 in stocks and bonds and $ 112,911 in stock of the Morris Engineering Company and the Morris Realty Company, Inc. In addition, he left $ 60,475.63 in joint savings accounts with his three sons. The decedent was aware of the extent of his brother's estate because he was an executor of the will and signed the inventories of the estate. The decedent always had an estate plan of giving four shares, one share to each nephew and one share to Francis Gallagher since the time of his brother's death in the mid-sixties. In the opinion of the decedent's physician, Dr. S. Edwin Muller, the decedent was not in good health when he was discharged from the hospital in 1971. He had emphysema, a chronic disease, according *469 to his attending physician. The stroke which the decedent suffered was an unusual occurrence and a more acute medical problem than arteriosclerosis. The three nephews of the decedent attended parochial school, Loyola High School, Loyola College, and the University of Maryland Medical School because the local schools were less expensive. Although the decedent insisted on paying the tuition at Loyola High School for his nephews, their parents, Dr. and Mrs. Frank Kailer Morris, were capable of paying their tuition at that time. Prior to 1971 the decedent had never made a reportable gift to anyone. All of the gifts made by the decedent had a total value of $ 78,168.33. At the time of his death the decedent had a gross estate of $ 524,984.79, exclusive of the gifts previously made. The decedent excluded the total amount of the gifts from his gross estate. Respondent, in his notice of deficiency dated June 13, 1977, determined that the transfers by gift were made by the decedent in contemplation of his death, and therefore the $ 78,168.33 is includable in the decedent's gross estate under section 2035 of the Code. ULTIMATE FINDING OF FA T The gifts totaling $ 78,168.33 *470 made by the decedent within three years of his death were made in contemplation of death. OPINION Petitioner contends that (1) the gifts merely represented additional instances in a long history of gift giving by the decedent; (2) the decedent gave the gifts to his nephews because they needed it for their medical educations; (3) the gifts to the Gallagher children were made because of their financial need or for their education; (4) the decedent's health was not the motivating factor for his gifts; and (5) the mere fact that the decedent attempted to equalize his inter vivos transfers among donees and that his will also provided for equal apportionment is irrelevant in determining the contemplation of death issue. To the contrary, respondent argues that the decedent was an elderly man who was not in very good health when he made the gifts; that the transfers were made pursuant to a continuing estate plan which he had devised prior to his illnesses; that the gifts were made to the natural objects of his bounty; and that the gifts were made in contemplation of death. We agree with the respondent. Section 2035 requires that the value of all property which has been transferred *471 by the decedent in contemplation of death shall be included in his gross estate. If the transfer is made within three years of death, there is a statutory presumption that it is in contemplation of death unless shown to the contrary. The burden rests with the petitioner to prove that the gifts were prompted by life motives of the decedent. Smails v. O'Malley, 127 F.2d 410 (8th Cir. 1942). The purpose of section 2035 is to tax inter vivos transfers which are substitutes for testimentary dispositions. Nichols v. Coolidge, 274 U.S. 531 (1927). The primary concern is to scrutinize the circumstances to determine dominant motives of the donor at the time of the transfers. For purposes of section 2035 it is sufficient if contemplation of death is the inducing cause of the transfer, whether or not death is believed to be near. United States v. Wells, 283 U.S. 102 (1931). Under the provisions of section 20.2035-1(e), Estate Tax Regs., a gift is prompted by thoughts of death if made as a substitute for a testamentary disposition or for any other motive associated with death. If the dominant motive of the decedent is associated with death, *472 rather than life, the gift is one in contemplation of death. Heiner v. Donnan, 285 U.S. 312 (1932). Transfers involving a division among those who would eventually inherit upon the death of the decedent can be gifts within the meaning of section 2035. City Bank Farmers Trust Co. v. McGowan, 323 U.S. 594 (1945). This record reveals that the decedent was a wealthy bachelor with close ties to the family of his brother, Dr. Frank Kailer Morris, and the family of his cousin, Francis X. Gallagher. In a will executed on May 29, 1971, the decedent delineated his estate plan which essentially divided his residual estate into four parts, with one part going to each nephew and one part to his cousin, Francis X. Gallagher. A few days later the decedent was admitted to Mercy Hospital with a stroke. Within six weeks of his discharge he wrote a completely new will and, on the same day, created a trust for his nephews which he funded with $ 31,500. He also gave $ 10,500 to his cousin, Francis X. Gallagher, on that day. The amounts given were compatible with the pattern of the bequests in both the old will and the new will. In February 1972, the decedent's *473 counsin, Francis X. Gallagher, died. On March 3, 1972, the decedent transferred another $ 30,000 to the trust for the nephews who were in no way financially affected by Gallagher's death. On March 22, 1972, he created a trust for the children of Francis X. Gallagher and funded it with $ 10,000. On that date he also executed a codicil to his August 11, 1971, will which reflected the changes made. The gifts of August 11, 1971, March 3, 1972, and March 22, 1972, are those involved in this case. In the last will written before he died the decedent reiterated his plan for the disposition of his estate.In that will he took into consideration the trusts created in disposing of the remainder of his estate. The decedent was an elderly man who had voluntarily entered the hospital on several occasions in the three years prior to his death with the acute illnesses of stroke and emphysema and the chronic illnesses of arteriosclerosis and pituitary tumor. In our opinion the circumstances surrounding the gifts in question compel the conclusion that they were made by the decedent in contemplation of death. First, the trust was made just six weeks after the decedent was released from the *474 hospital after suffering a serious illness. A six-week period would be adequate to consult with his attorney and have the instruments drafted. Secondly, the decedent had executed a perfectly good will in late May 1971, just a week before he was admitted to the hospital. Yet, just after he was discharged from the hospital, he created the trust and also created a completely new will. The will was executed on the same day that the trusts were created and the two instruments are closely connected. The testimony in this case shows that the decedent was very close to his nephews. He dined with them at their mother's home several times a week. The association became closer after the death of the decedent's brother. At that time the decedent assumed the role of a father figure to the boys. His connection with Francis X. Gallagher was strong although not as close as with his nephews. Thus, his nephews, and to a lesser extent his cousin, were the natural objects of his bounty. When gifts are made to the natural objects of one's bounty, there is a strong inference that the gifts are made in contemplation of death. Smails v. O'Malley, 127 F.2d 410 (8th Cir. 1942). *475 There is little support in this record for the contention that the decedent's nephews were in need of money to complete their education or that the decedent's primary motive in transferring the funds to a trust for his nephews was a desire that they would receive an education. Until August 1971, the decedent had never made a reportable gift to anyone. While he insisted on paying the nephews' high school tuitions, those amounts were minimal. Dr. Frank Kailer Morris had died in 1967 leaving an estate of about half a million dollars, much of it in blue chip stocks and bonds and cash. There were several bank accounts which were held jointly with his sons.In one account for the eldest son, $ 40,000 was available. The account for the second eldest son held over $ 9,000 as did the account for the third son. The family owned a home in one of the prime residential areas of Baltimore and also a summer home in a residential area in Anne Arundel County. The records of the Orphans' Court for Dr. Morris reveal that there was little fear that the decedent's three nephews would be unable to complete their medical educations due to financial need.They had already decided to attend local schools *476 and live at home which cut the costs of their education considerably.The decedent was an executor of his brother's will and therefore was privy to the financial information contained in the files of the Orphans' Court. He signed all of the documents. The joint accounts alone would have been adequate for the nephews' tuition costs. The decedent knew that there was no dire need for tuition by the nephews. Petitioner asserts that the decedent's primary concern in making the gifts to his nephews was to defray the cost of their educational expenses. Yet, on the same day as the gifts to his nephews were made, the decedent also made a sizeable cash gift to his cousin, Francis X. Gallagher. If the decedent was merely interested in the education of his nephews, there was no reason for him to make a payment at that particular time to his cousin, who was already a practicing attorney. We think the payment to his cousin reflected his desire for a four part disposition of his estate. Likewise, the gifts to the Gallagher children were not made because of their financial need or for their education. The amount of $ 10,000 given to the five Gallagher children in March 1972 was inadequate *477 to provide for their education. Moreover, since the death of their father had precipitated a critical financial situation, the inference we draw from the record is that this money was intended for present living necessities, even though such amount was inadequate for the needs of a widow and five children for any extended period of time. Significantly, the $ 10,000 was exactly 25 percent of the amount given to the decedent's nephews. Thus, regardless of the need of the Gallagher family, the decedent refused to deviate from his established testamentary plan. The comfortable situation of the Morris nephews and the desperate situation of the Gallagher children had no bearing on the decedent's decision to make gifts in the exact proportion of his will. It seems to us that his primary motivation was a fear of death and a desire to plan his estate in a particular way. Petitioner argues that the decedent's physical condition was not life threatening and that it did not motivate him to make the gifts. But the chronology of events, as well as the testimony of his physician that he was not a healthy person, clearly refute this argument. The decedent had written a new will in late May *478 1971, just prior to his admittance to the hospital for a stroke. After his release, he immediately consulted with lawyers and a new will was drawn up in early August. That will took into consideration the large gifts bestowed by the decedent upon his nephews and his cousin which were given on the same day the will was signed. Additionally, the decedent was an elderly man with acute and chronic medical problems which required hospitalization during the three year period before his death. As we see it, these facts show that poor health was a motivating factor for the decedent's gift giving. It is not surprising that the decedent continued to work until a month before he died despite declining health. He was a man who lived alone and had no hobbies. Accordingly, as reflected in our ultimate finding of fact, we hold that the gifts in issue were made by the decedent in contemplation of death. It therefore follows that the entire amount of the gifts should be included in the decedent's gross estate. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect at the time of the death of Edward J. Morris.↩