McAdams *et al. v.* McAdams *et al.*

(*Nashville*, December Term, 1940.)

Opinion filed January 11, 1941.

THOS. G. WATKINS, of Nashville, for appellant.

CATE & CATE, JOHN C. SANDIDGE, McLANE & BATES, BASS, BERRY & SIMS and JAMES C. HAVRON, all of Nashville, for appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

In this cause the estate of the late W. G. McAdams is being administered. He died intestate in 1936. The

particular controversies presented to this court are between the widow of the intestate and his administrator. Mrs. McAdams is claiming her statutory benefits as the relict of the deceased and the administrator is contending that she is deprived of such benefits by reason of a marriage contract. The chancellor and the Court of Appeals both held that the marriage contract relied on by the administrator was effective to cut off all claims of the widow. This court granted a petition for *certiorari* and the case has been argued before us.

McAdams was an elderly widower, past seventy years of age, when he married the lady here suing, in 1926. She was twenty-seven years of age. He had seven living children by a former wife, all adults. One child was born to this last marriage.

The contract interposed by the administrator was executed on November 5, 1926. It recited that W. G. McAdams and Jane Dowdy had agreed to be married and that McAdams relinquished all claims to any property that the young woman then had or might thereafter acquire; and that she should manage and control said property as a *feme sole*, without interference from him. This is the substance of the first two paragraphs of the agreement containing covenants of McAdams.

The contract then proceeds:

"And in consideration of the aforesaid stipulations and agreement, we do further agree and contract that the said W. G. McAdams, nor any part of his estate, shall be liable for any of the debts, contracts, obligations, or liabilities of the said Jane Dowdy, contracted, created, or existing before their said marriage hereafter to be consummated, or for which she is now being sought or may hereafter be sought to be made liable or responsible for; and we further contract and agree that the said Jane

Dowdy, upon the consummation of said marriage is to have no portion of the property of the said W. G. McAdams, either real, personal, or mixed, money, choses in action, accounts, or the proceeds of life insurance upon the life of said W. G. McAdams, and said Jane Dowdy hereby relinquishes all rights of dower or homestead in any real estate that the said W. G. McAdams has or may have, and in case the said W. G. McAdams should die before the said Jane Dowdy, she hereby relinquishes all and every interest in his estate that she may or would be entitled to in consequence of said marriage.

"A further consideration of the foregoing agreement and contract is that said W. G. McAdams has this day given to and assigned to said Jane Dowdy, two life insurance policies of Twenty-five Hundred Dollars ($2,500.00) each upon the life of James Ridley of Maury County, Tenn., in the Penn Mutual Life Insurance Company of Philadelphia, the said policies being numbers 830254 and 830255, issued February 1, 1918 on the Ten-Payment Plan, the premiums hereafter maturing upon said policies to be paid by said W. G. McAdams as they mature respectively. But if she should die before said W. G. McAdams or if she should separate from him as such wife the said policies and all benefits thereunder shall revert to him or to his heirs."

It is the contention of the widow, in the first place, that she did not execute this contract, at least, knowingly. She admits signing a certain paper presented to her by the notary public before whom the marriage contract appears to have been acknowledged, but she says she did this without reading the instrument and under the impression that it was a document of another nature.

Consideration of the evidence on this point is beyond the province of this court. The chancellor and the

Court of Appeals have both found that Mrs. McAdams executed this contract knowing its contents, and that no fraud was practiced upon her in the matter. This concurrent finding is amply supported by the testimony of Mr. W. A. Guild of the Nashville Bar, who prepared the contract and read it over to Mrs. McAdams, by the notary who took her acknowledgment, and by subsequent admissions made by her.

The Court of Appeals has fully discussed the widow's contentions regarding the excution of this contract, the consideration for the same, and that court has set out in its opinion the pertinent authorities. The argument made for the widow in this court respecting these matters is largely a repetiton of the argument made in the Court of Appeals and has been sufficiently dealt with in that court's opinion.

In the alternative, in the event her effort to escape the contract should fail, the widow seeks recovery from the estate on account of the policies of insurance agreed to be assigned to her in the marriage contract. This claim of the widow was likewise denied by both lower courts, improperly we think.

The facts of the matter are that McAdams never did assign these policies to his wife formally as he had agreed to do. She testified that they were delivered to her and remained in her hotel room for a time, but were afterwards placed with his papers.

The policies, as indicated by the marriage contract, were for $2,500 each upon the life of one James Ridley. They were assigned to McAdams on May 5, 1921. They were ten-pay policies and had been paid up in full on January 5, 1928. As above stated, McAdams had made no assignment of these policies to his wife, and on May

15, 1928, he cashed in the policies for their value at that time, to-wit, $2,133.96.

Mrs. McAdams testified that she did not learn that her husband had cashed in the policies until about two years after this was done. She testified that he then told her about it, told her that the money represented by the policies was bringing only two per cent from the insurance company, that he accordingly took the money and put it in bank in his saving account where it drew four per cent. She said that she agreed to this.

■ The Court of Appeals denied the widow recovery for this sum on the theory that she had agreed the proceeds of the policies might be used for the support of the family and that under such an agreement she had no right to recover. But we find no evidence indicating that there was such an agreement on her part. She agreed that her husband might place the money in his savings account where, according to what he had told her, it would draw more interest. We find nothing in her testimony indicating that she intended to relinquish her rights in the proceeds of the policies.

It should be stated that McAdams' estate consisted almost entirely of money deposited in savings accounts in different banks. At the time of his marriage, he seems to have had about $80,000 so deposited drawing four per cent interest. The interest on these deposits seemed to have constituted his principal source of income.

Such being the circumstances, the case falls directly under the authority of *Tellico Bank & Trust Co.* v. *Loomis*, 147 Tenn., 158, 246 S. W., 21. In the case named the wife permitted her husband to use her money in a milling business in which he was engaged. By so doing, the case having arisen since the Married Women's Emancipation Act, the court held that the wife's course did

not amount to a gift of such funds to her husband, but rather an entrusting thereof to him as her agent or manager.

The case before us is similar. McAdams' business was lending money to the banks. His wife entrusted her funds to him to be so used. We think she did not part with her title. No innocent third party is involved and there is no question of estoppel.

Other authorities supporting this view are 26 Am. Jur., 722, 30 C. J., 869, Eversley on Domestic Relations, 5th Ed., 235.

If it be said that the testimony of Mrs. McAdams is not so definite and certain as it might be, it is to be observed that, in the absence of such testimony, indicating her acquiescence in the cashing in of these policies by McAdams, his estate would doubtless be liable for the full amount of the policies, to-wit, $5,000. By the terms of the marriage contract, McAdams agreed to pay the premiums thereafter maturing upon the policies until they did mature. This he did. The insured, Ridley, died within about one year after the policies were cashed in. If, therefore, the testimony of Mrs. McAdams be rejected, we would have a case where McAdams breached his contract to assign the policies to his wife, cashed them in without her knowledge, and appropriated the proceeds. Under such circumstances, the insured being dead, the widow would seem to be entitled to the full amount of the policies.

▮ In addition to holding that the marriage contract was effective to deprive the widow of her distributive share in the intestate's estate, the lower courts held that this contract cut off her rights to the statutory exemptions and year's support. We think this was erroneous.

The marriage contract itself indicates that the draftsman thereof did not intend to include within its provisions exemptions and year's support. The draftsman is a careful and accurate lawyer. He expressly excluded the widow's right of dower and homestead. This because dower and homestead are not regarded as any part of the estate of a decedent and such interests would not have been cut off by a general exclusion of every interest of the widow in the estate of her husband. See *Crenshaw* v. *Moore*, 124 Tenn., 528, 137 S. W., 924, 34 L. R. A., N. S., 1161, Ann. Cas., 1913A, 165, and *Chamness* v. *Parrish*, 118 Tenn., 739, 103 S. W., 822.

Like dower and homestead, exemptions and year's support are not regarded as part of a decedent's estate. *Crenshaw* v. *Moore, supra*; *Rowlett* v. *Rowlett*, 116 Tenn., 458, 95 S. W., 821.

The marriage contract, expressly excluding the wife's right to dower and homestead, would doubtless have excluded her right to the exemptions and year's support, had such a purpose been intended.

Regardless, however, of the language of the contract, it is against the policy of the law for exemptions to be waived. The head of a family himself is not permitted to waive his exemptions by executory contract or otherwise. *Mills* v. *Bennett*, 94 Tenn., 651, 30 S. W., 748, 45 Am. St. Rep., 763; *Denny* v. *White*, 42 Tenn. (2 Cold.), 283, 88 Am. Dec., 596.

Certainly the law would throw around a widow the same protection that covered her husband during his lifetime. No more than he should she be deprived of the protection of the statutes.

As for the year's support, as pointed out in *Crenshaw* v. *Moore, supra*, that is but an extension for one year after his death of the husband's duty to provide

for his wife. Such a duty is placed upon him by the common law and by statute. Code, section 11370. The husband cannot escape this duty nor in general can the wife waive this right by contract. 26 Am. Jur., 935; 30 C. J., 517.

Some other claims put forward by the widow in this litigation have been rejected by the lower courts and we think properly so for the reasons given in the opinion of the Court of Appeals.

We think the decree of the Court of Appeals should be modified so as to allow the widow her statutory exemptions and year's support. That the decree of that court should be further modified so as to allow her claim for the proceeds of the insurance policies, $2,133.96, and interest on this sum should be calculated at the rate of four per cent from May 15, 1928, compounded semiannually as the bank would have done. This was the amount of interest paid by the bank, according to the testimony of Mrs. McAdams, and it was at this rate she agreed her money might be used.

Thus modified, the decree of the Court of Appeals is affirmed and the cause remanded to the chancery court for further proceedings in accordance herewith. The costs of appeal will be divided between the administrator and Mrs. McAdams. Costs below will be adjudged by the chancellor.