## McGREW'S ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 9354.

Circuit Court of Appeals, Sixth Circuit.

April 12, 1943.

Seymour Samuels, Jr., of Nashville, Tenn. (Seymour Samuels, Jr. and James W. Allen, both of Nashville, Tenn., on the brief), for petitioner.

Bernard Chertcoff, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Samuel H. Levy, and Carlton Fox, all of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

On petition to review a decision of the United States Board of Tax Appeals (now the United States Tax Court), determining a specified deficiency in the estate tax of a resident of Tennessee who died on March 16, 1937, the executor of Benjamin Franklin McGrew assigns error in two aspects.

1. The first error charged is that, upon a false predicate that the conveyances were made in contemplation of death within the meaning of Section 302(c) of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int. Rev.Code, § 811(c),[1] the Board of Tax Appeals sustained the action of the Commissioner of Internal Revenue in including, in the decedent's gross estate, the value of two tracts of farm land conveyed on April 30, 1935, by the decedent to his wife.

The Board of Tax Appeals found, as a matter of fact, that the conveyance by the decedent to his wife was made without consideration and in contemplation of his death. This ultimate finding flowed from

---

[1] Revenue Act of 1926, c. 27, 44 Stat. 9:

"Sec. 302 [as amended by Section 404 of the Revenue Act of 1934, c. 277, 48 Stat. 680]. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States * * *

"(c) [as amended by the Act of March 3, 1931, c. 454, 46 Stat. 1512, and by Section 803(a) of the Revenue Act of 1932, c. 209, 47 Stat. 279]. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

other findings, among which stood out prominently the fact that, within less than three weeks after the conveyance, the decedent executed a will, under the provisions of which he devised and bequeathed his entire estate, after payment of debts, to a trustee, for the benefit of his wife during her natural life, with full power of disposition of the estate by will vested in her. The Board found, moreover, that the deed of conveyance was kept by decedent's wife in her safety deposit box, and was not recorded until after her husband's death.

The findings of the Board embraced the fact that, on account of numerous lawsuits pending against him, the decedent was apprehensive that he would lose the greater part of his property, and desired his wife to own the two small tracts conveyed, adjoining a farm which had been devised to her by her first husband. From the time of her second marriage, she and the decedent had resided on this farm. He managed it, paid the taxes, and took the proceeds of the products. He had often stated that he intended to deed to her the two tracts in controversy. At the time he actually did so, he was in "fairly good health, although he had never been a strong man," and "was not then suffering from the illness which caused his death"; but was worried over the pending litigation.

In its opinion, the administrative tribunal complained that, inasmuch as the burden rested upon the petitioner to overcome the prima facie correctness of the Commissioner's determination that the decedent transferred the property in contemplation of his death, and in view of the presumption created by Section 302(c) of the Revenue Act, the Board "should have been placed in a position to determine by means of a sufficiently complete description of all relevant facts what was decedent's impelling motive in making the two transfers." Declaring that the petitioner "fell far short of doing this," the Board pointed out that the age, and state of mind of the decedent when the transfers were made, and the cause of his death had not been revealed; and that, although he was ill within six months of the time of the conveyance, the nature of his illness had not been shown. It was said: "The single circumstance relied upon to induce us to determine that these transfers were not made in contemplation of death is that decedent had previously intended to transfer the property to his wife and that at the time he feared his creditors might take it. But, even this,

in the form in which the evidence appears, is about as consistent with the one motive as with the other. * * * The record, taken as a whole, leaves us far from satisfied that the gift was not brought about by testamentary motives. We have accordingly made the finding that the property was transferred in contemplation of death."

Since United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 452, 75 L.Ed. 867, it has been established law that whether a gift inter vivos was made in contemplation of death within the meaning of the Revenue Act depends upon the dominant motive of the donor, "in the light of his bodily and mental condition," to be determined in each individual case from the circumstances; and that a transfer may be in contemplation of death, even though not induced by the fear that death is "near at hand."

The burden of proving the incorrectness of a decision of the Commissioner of Internal Revenue, that property of the decedent was transferred by him in contemplation of death within the meaning of the Revenue Act pertaining to estate taxes, rests upon the representative of the decedent who attacks the assessment. Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184; Oliver v. Bell, 3 Cir., 103 F.2d 760, 763; Smails v. O'Malley, 8 Cir., 127 F.2d 410.

The Supreme Court held, in Colorado Nat. Bank v. Commissioner of Internal Revenue, 305 U.S. 23, 59 S.Ct. 48, 83 L.Ed. 20, that the decision of the Board of Tax Appeals as to whether a transfer was in contemplation of death is a question of fact upon which the decision of the Board, if supported by substantial evidence, is conclusive. Compare McCaughn v. Real Estate Land Title & Trust Co., 297 U.S. 606, 56 S.Ct. 604, 80 L.Ed. 879.

The limited power of the circuit courts of appeal in reviewing issues of fact in tax cases has been made clear by the highest authority. In Wilmington Trust Co., Executor, v. Helvering, Commissioner of Internal Revenue, 316 U.S. 164, 168, 62 S.Ct. 984, 986, 86 L.Ed. 1352, the Supreme Court said: "It is the function of the Board, not the Circuit Court of Appeals, to weigh the evidence, to draw inferences from the facts, and to choose between conflicting inferences. The court may not substitute its view of the facts for that of the Board. Where the findings of the Board are supported by substantial evidence they are con-

clusive. [Citing cases.] Under the statute the court may modify or reverse the decision of the Board only if it is 'not in accordance with law.' 44 Stat. 110, § 1003 (b), 26 U.S.C. Int.Rev.Code, § 1141(c)(1)." See, also, Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 84 L.Ed. 226; Helvering v. Kehoe, 309 U.S. 277, 279, 60 S.Ct. 549, 84 L.Ed. 751; Elmhurst Cemetery Co. v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L.Ed. 491; General Utilities Co. v. Helvering, 296 U.S. 200, 206, 56 S.Ct. 185, 80 L.Ed. 154; Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343; Crowell v. Commissioner, 6 Cir., 62 F.2d 51, 53.

In the circumstances of this case, there was substantial evidence from which the Board of Tax Appeals could reasonably draw the inference upon which its decision was based. This court is, therefore, constrained to uphold the decision of the Board that the conveyance by the decedent was without consideration, and in contemplation of his death.

2. The second ground of attack upon the decision of the Board of Tax Appeals is that $19,350, which the decedent's wife had received from him and deposited in a joint savings account, should not have been included in his gross estate under Section 302(e) of the Revenue Act of 1926,[2] Section 811(e), Internal Revenue Code, 26 U.S. C.A. Int.Rev.Code, § 811(e).

The facts found by the Board, upon which the inclusion was made, will be narrated in substance. At a time when the decedent was ill, a judgment approximating $83,000 was rendered against him. By selling securities and other property, owned partly by herself and partly by the decedent, his wife accumulated sufficient cash to pay the judgment. Twenty-five thousand dollars of the necessary sum was procured from the sale by her of a portion of her individual property. Subsequently, the decedent gave his wife certain bonds to reimburse her for this contribution toward the payment of the judgment against him.

A second judgment against the decedent was compromised for $37,500, to pay off which the wife sold, for approximately $25,000, the bonds received by her from the decedent; sold other property, some of which belonged to decedent; and borrowed some money, placing the proceeds of the loan and the sales on deposit to her checking account in a bank. On October 1, 1935, she withdrew the entire deposit of $36,881.96 and placed it to the credit of decedent's checking account. On the following day, decedent's check for $37,500, in satisfaction of the compromise settlement, was paid by the bank of deposit. On May 11, 1936, decedent opened a savings account, which, by December 2, 1936, had increased to the amount of $23,000, which was withdrawn on January 7, 1937. A deposit to the decedent's savings account in the amount of $21,000 was made, however, on January 20, 1937. This was reduced to a credit balance in the account of $19,350 on March 6, 1937. As found by the Board of Tax Appeals: "On that date the account was closed and the sum of $19,350 was given by decedent to his wife without consideration, for the purpose of reimbursing her for the bonds sold to assist in paying the compromise. On the same day, March 6, 1937, the wife opened a joint savings account in her own name and that of decedent with a deposit of the $19,350, which remained the amount on

---

[2] " * * * (e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: Provided further, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants; * * *"

162

deposit in the joint account ten·days later when decedent died."

In sustaining the inclusion by the Commissioner of the bank deposit item of $19,350 in decedent's gross income, for estate tax purposes, the Board of Tax Appeals held that the fact that his wife had supplied the decedent with funds with which to satisfy his creditors did not constitute consideration, unless the advances were loans accompanied by promise of repayment. In its opinion, the Board quoted the explanation given by the widow of the purpose of opening the joint bank account: "We always lived that way, what I had was his, and what he had was mine, if we needed it. * * *" The opinion asserts: "There is no evidence that the wife was promised or expected repayment at the time the creditors were paid, and we are unable to find anything in the record justifying the conclusion that decedent's funds, with which this joint account was opened, were given to the wife to liquidate any such promise or for anything else approaching an adequate and full consideration in money or money's worth."

■ It is true, as insisted by the petitioner, that the Board of Tax Appeals was in error in its view, derived from Williams v. Williams, 146 Tenn. 1, 236 S.W. 926, that, under Tennessee law, no implication that the transaction was a loan arises from the husband's use of his wife's funds for his own personal purposes. Later Tennessee cases make it plain that when a husband, with his wife's consent, uses the corpus of her separate estate in his own business, there is no presumption of a gift of the property by the wife to her husband. City National Bank of Morristown v. Harle, 7 Tenn.App. 286 (certiorari denied by Supreme Court of Tennessee, April 25, 1928); Tellico Bank & Trust Co. v. Loomis, 147 Tenn. 158, 246 S.W. 21; McAdams v. McAdams, 177 Tenn. 67, 146 S.W.2d 140.

■ But, even so, the presumption is not controlling against substantive evidence; and the issue of whether a transfer from a wife to her husband is in the nature of a loan or a gift is, in every case, a question of fact. This is clearly recognized in the cited Tennessee cases.

■ Where there is substantial evidence controverting a prima facie presumption, the fact issue must be resolved upon the whole body of proof. In Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229, a court of appeals was reversed in its holding that when the evidence on an issue of fact is evenly balanced a presumption created by statute must tip the scales. The Supreme Court declared that the only matter for decision was whether an affirmative finding contrary to the legal presumption was supported by evidence. See, also, New York Life Ins. Co. v. Gamer, 303 U.S. 161, 170, 58 S.Ct. 500, 82 L.Ed. 726, 114 A.L.R. 1218, and cases there cited.

■ The burden of proof rested upon the petitioner to bring the estate of Benjamin Franklin McGrew within the claimed exception contained in Section 302(e) of the Revenue Act. See Foster v. Commissioner of Internal Revenue, 9 Cir., 90 F.2d 486; Smails v. O'Malley, 8 Cir., 127 F.2d 410. The Board of Tax Appeals has found, as a matter of fact, that the petitioner has not carried the burden of showing that the wife of the decedent received from him ten days before his death the $19,350, which she deposited to their joint account, in fulfillment of a promise or expectation of repayment of advances made by her to him, or "for anything else approaching an adequate and full consideration in money or money's worth."

■ In consequence of this finding of fact, based upon evidence from which the Board inferred as it did, it is the duty of this court to uphold the decision of the Board upon the point in issue; even though, if privileged to indulge our own inferences, our conclusion would controvert that of the Board.

Affirmed.