The CLEVELAND TRUST COMPANY and A. Dean Perry, Executors of the Estate of Helen Wade Greene, Deceased, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

The CLEVELAND TRUST COMPANY and A. Dean Perry, Executors of the Estate of Helen Wade Greene, Deceased, Plaintiffs-Cross Appellants,

v.

UNITED STATES of America, Defendant-Cross Appellee.

Nos. 19175, 19176.

United States Court of Appeals Sixth Circuit.

Jan. 23, 1970.

Thomas V. Koykka, Cleveland, Ohio, for Cleveland Trust, etc., Carlton B. Schnell, Arter & Hadden, Cleveland, Ohio, on brief.

Michael B. Arkin, Atty., Dept. of Justice, Washington, D. C., for United States, Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Jonathan S. Cohen, Attys., Dept. of Justice, Washington, D. C., on brief, Bernard J. Stuplinski, U. S. Atty., Carl H. Miller, Asst. U. S. Atty., Cleveland, Ohio, of counsel.

Before CELEBREZZE, PECK and McCREE, Circuit Judges.

JOHN W. PECK, Circuit Judge.

These combined appeals arose out of an action for the refund of federal estate tax deficiencies of $565,980.20, assessed and collected by the Internal Revenue Service against the Estate of Helen Wade Greene. The deficiencies were based on the determination of the Internal Revenue Service (hereinafter usually "IRS") that a transfer of property to an irrevocable trust by the decedent, Helen Wade Greene, some sixteen months prior to her death, was made in contemplation of death and thus includable in her gross estate.

The decedent, Helen Wade Greene, was a member of the wealthy and prominent Wade family of Cleveland, Ohio. On August 15, 1957, she transferred property having a value of $1,322,580.70 to an irrevocable trust which provided for payment of the income from the trust to the decedent's daughter, Helen Greene Perry, for life, with the remainder to be distributed to the decedent's grandchildren after Mrs. Perry's death. Approximately sixteen months after the transfer to the irrevocable trust, the decedent died.

The estate and the IRS initially attempted to use informal conference procedures to settle the dispute concerning whether the gift in trust was made in contemplation of death. For reasons more fully discussed below, the dispute was not thus settled at the administrative level; instead additional disputes outside the original contemplation of death issue arose out of the attempted settlement procedure. After that attempt disintegrated the estate paid the deficiency and filed a four-count suit for a refund. The last three counts, more fully discussed below, alleged that the estate was entitled to recover the deficiency independently of the merits of the contemplation of death issue because the IRS violated its own procedures in the course of the attempted settlement of the issue at the administrative level. The District Court granted the government's motion for summary judgment on the last three counts. The first count, concerning the merits of the contemplation of death issue, was tried to a jury. The first trial of the contemplation of death issue resulted in a mistrial when the jury failed to reach a verdict. In the second trial the District Court granted the estate's motion for a directed verdict at the close of all the evidence.

The government has perfected an appeal from the directed verdict in favor of the estate on the contemplation of death issue. The estate has perfected an appeal from the District Court's orders granting the government's motions for summary judgment on the last three counts of the refund suit, the estate's motion for an interlocutory appeal from these orders having been denied by this Court. (Misc. No. 347, January 11, 1967).

I. Contemplation of Death Issue

We will deal first with the substantive issue of whether the transfer of property to the irrevocable trust on August 15, 1957, was in contemplation of death. Section 2035 of the Internal Revenue Code (26 U.S.C. § 2035) requires the inclusion in the gross estate of a decedent

transfers made in contemplation of death, and creates a rebuttable presumption that transfers made within three years of a decedent's death were made in contemplation of death. Since the decedent died within three years of making the gift, the statutory presumption arose that the gift here was made in contemplation of death.

It should be noted at the outset that the government did not contend at trial that the decedent was fearful of imminent death at the time of making the gift. Therefore the gift was made in contemplation of death only if it was within the special statutory meaning of those words. Fortunately, the issue is not novel. The meaning of the words "in contemplation of death" as used in § 2035 and its predecessor statutes has long been settled by the case law.

■■■ A transfer may be "in contemplation of death" within the meaning of the statute even though not induced by a fear of imminent death. Death is "contemplated" within the meaning of the statutory presumption if the dominant motive for the transfer is the creation of a substitute for testamentary disposition designed to avoid the imposition of estate taxes. Allen v. Trust Company of Georgia, 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367 (1946); United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 887 (1931); In re Kroger's Estate, 145 F.2d 901 (6th Cir. 1944). Clearly, where the dominant motive for the transfer is to escape estate taxes, the gift is made in contemplation of death. Cronin's Estate v. Commissioner of Internal Revenue, 164 F.2d 561 (6th Cir. 1947). Finally, it is well established that when a transfer is part of an overall testamentary plan, an intention to make the transfer a substitute for testamentary disposition and thereby avoid the imposition of estate taxes can be inferred. Purvin v. Commissioner of Internal Revenue, 96 F.2d 929, 120 A.L.R. 166 (7th Cir. 1938); Updike v. Commissioner of Internal Revenue, 88 F.2d 807 (8th Cir.), cert. denied, 301

U.S. 708, 57 S.Ct. 942, 81 L.Ed. 1362 (1937).

■■■ Applying these well established principles to the evidence adduced at the second trial, we hold that the District Court committed reversible error in directing a verdict for the estate. The estate, which had the burden of proof (McGrew's Estate v. Commissioner of Internal Revenue, 135 F.2d 158, 148 A.L.R. 1045 (6th Cir. 1943)), introduced evidence showing the Wade family's strong tradition of support of philanthropic and charitable organizations. The estate also introduced evidence tending to show that the decedent made the transfer to the irrevocable trust to enable her daughter to carry on the family tradition of support for these organizations by putting the money at her ready disposal. The estate also showed that the transfer to the irrevocable trust was a relatively small percentage of the decedent's total estate.

The District Court apparently viewed this evidence as sufficient to overcome the statutory presumption in favor of the government, for in granting the estate's motion for a directed verdict the Court stated:

"There is a complete lack of any evidence here on the part of the Government to show that this was ever a gift in contemplation of death. And by contemplation of death we mean the impelling cause of this gift. There is no evidence here upholding the Government's theory that the impelling cause of this gift was the thought of death. There is no such evidence anywhere in this case. There is nothing before us to that effect anywhere. There was only a rebuttable presumption, which was completely rebutted."

While we agree with the District Court that the estate introduced evidence from which the jury could reasonably infer that the gift was induced by life motives and that such evidence was sufficient to rebut the presumption in the government's favor, we disagree with the District Court's view that there

was no evidence from which reasonable jurors could infer that the gift was made in contemplation of death. It is true that the government produced only two witnesses of its own (and their testimony related solely to the government's split gift theory discussed below), but it adduced evidence through cross-examination of the estate's witnesses. By this means, frequently the only one available to it in such situations, the government showed that the property with which the irrevocable trust was funded came from the corpus of a revocable trust of approximately nine million dollars, that the decedent revised the revocable trust and her will, which poured over almost all of her property to the revocable trust, simultaneously with the execution of the irrevocable trust in issue, and showed the similarity of the dispositive provisions of each instrument. The government also established through such cross-examination that the decedent had at least some familiarity with the tax laws, that the daughter did not need the trust income for her own support and that the decedent had previously established a separate $1.5 million charitable trust. The effect of all this evidence adduced by the government was to undermine the estate's theory that the gift was induced by a desire to enable the daughter to carry on the family tradition of support for charitable causes and to establish facts from which a jury could find that the gift was induced by a desire to create a substitute for testamentary disposition, thereby avoiding the imposition of estate taxes.

In reaching this result we particularly stress the lack of direct evidence of the motivation for the gift. The decedent failed to state to her attorney or to state in the trust instrument itself the reason for the creation of the trust. On one occasion when the decedent's daughter had asked for some money for a charitable cause, the decedent stated "sort of in a laughing manner" that she should give some money to her daughter to enable her to take care of the charities on her own. We do not find this statement, made some three to four months prior to the establishment of the trust, conclusive of the dominant motive for the gift.

If we were here reviewing a finding of fact by the court or a jury verdict that life motives were the dominant motives for the gift, we would affirm that finding. *See e. g.*, Routzahn v. Brown, 95 F.2d 766 (6th Cir. 1938); Clark v. United States, 209 F.Supp. 895 (D.C. Colo.1962); Black v. United States, 68 F.Supp. 74 (N.D.Ohio 1946). Many of the facts now argued by the estate are relevant and sufficient under the cases to support a finding of fact that the gift was induced by life motives. However, in light of the lack of direct evidence of the motivation for the gift, the dominant motive had to be inferred from the basic facts, and while there was no dispute about the basic facts, conflicting inferences as to the dominant motive for the gift could be drawn from those facts. The resolution of those conflicting inferences should have been left to the jury. *See e. g.*, Baker v. Texas & Pacific Railway Co., 359 U.S. 227, 229, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959); Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944). We therefore hold that the District Court committed reversible error in granting the estate's motion for a directed verdict.

## II. Split Gift Theory

We turn next to the government's split-gift theory. Part of the direct testimony proffered by the government consisted of the values based on actuarial computations of the life estate to the decedent's daughter and of the remainder to the grandchildren. On the basis of this evidence the government contends that there were actually two gifts, the life income to the daughter and the remainder to the grandchildren. The government argues that the motive for each gift must be examined and that the estate failed to introduce any evidence at all of the motivation for the gift of the

remainder interest to the grandchildren other than "family reasons."

■ The government admits that this multimotive split-gift theory has been tested in only two previous cases and upheld in only one of them. In Garrett's Estate v. Commissioner of Internal Revenue, 180 F.2d 955, 17 A.L.R.2d 780 (2d Cir. 1950), the Court held that a trust consisting of life insurance policies and securities, with direction to use the income from the securities to pay the premiums on the life insurance, constituted separate gifts with separate motives. The Court stressed, however, the unambiguous intention to make two separate gifts, one of the income from the securities (less the amounts used to pay the life insurance premiums), the other the life insurance policies themselves. The Court also found it clear that the donor did not intend the beneficiaries of the trust to have any interest in the insurance policies until after his death. Thus the Court had no difficulty finding separate motives for the obviously separate gifts contained in the same trust agreement.

However, in a case more factually similar to the case at bar, Studebaker v. United States, 195 F.Supp. 841 (N.D.Ind. 1961), *modified*, 211 F.Supp. 263 (N.D. Ind.1962), the Court refused to apply the split-gift theory to a gift in trust providing for a life income to the settlor's daughter-in-law with a remainder over to the settlor's grandchildren. We agree with the Court in *Studebaker, supra,* that it is "unrealistic" to apply the split-gift theory to the type of gift at issue here. It is not reasonable to assume that the decedent had one motive for the gift of the life income and another for the disposition of the corpus upon the termination of the life interest. We must conclude therefore that the decedent had only one, albeit ambiguous, motive for the entire gift in trust, and we hold that the District Court committed no error in refusing admission of the evidence proffered to support the split-gift theory.

## III. Procedural Errors

We turn next to the additional issues which arose as the result of the attempt to settle the contemplation of death issue at the administrative level. The estate contends that even if the District Court committed error in directing a verdict for it, the judgment below must be affirmed because the IRS failed to follow its own regulations and procedures in dealing with the case at the administrative level.

Upon the initial examination of the estate tax return the IRS determined that the transfer to the irrevocable trust was a gift in contemplation of death and that therefore the amount of that transfer was includable in the decedent's gross estate. However, following an informal conference, as provided for by Treasury Regulations, an informal conference agreement was reached between the IRS and the estate. The agreement provided for certain concessions by both sides. The IRS agreed not to raise the contemplation of death issue in return for the estate's agreement to the increased valuation of some securities held by it and payment of additional estate tax and interest in the sum of $86,089.24. Pursuant to this agreement the estate executed. a Form 890–B, Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment. The executors and the beneficiaries of the estate also executed a "collateral agreement" which established their cost basis for the securities held by the estate at the increased valuation. Finally, the executors paid the additional assessed tax and interest of $86,089.24.

Approximately three months thereafter, the IRS informed the estate that it had rejected the informal conference agreement. The IRS again asserted that the irrevocable trust was executed in contemplation of death and includable in the gross estate. There then followed a great deal of correspondence between the estate and various levels of the IRS, with the estate seeking an explanation of the "clearly defined error" in the in-

formal conference agreement for which the IRS exercised its power to reject the agreement. The most enlightening response came from the Commissioner of Internal Revenue, who stated:

"* * * I do believe that it was reasonable for the review staff to find that, in your case, there was involved 'a clearly defined error having a substantial effect on the tax liability.' The legal presumption in favor of the Government, as provided by Section 2035 of the Code, was not adequately considered by the conferee, particularly in the light of the evidence indicating testamentary motive."

The estate then paid the deficiency and filed this four-count suit for a refund. As previously indicated, the first count concerned the substantive issue of whether the gift was made in contemplation of death. The last three counts alleged respectively that the estate was entitled to recover the deficiency paid regardless of the determination on the contemplation of death issue because the IRS violated its own Revenue Procedures by failing to identify the "clearly defined error" for which it rejected the informal conference agreement, because the IRS violated the Administrative Procedure Act by failing to give its reasons for rejecting the informal conference agreement, and because the IRS was estopped to deny the enforcibility of the informal conference agreement by its acceptance and retention of the additional tax and interest of $86,089.24. The District Court granted the government's motion for summary judgment on these last three counts prior to the trial on the contemplation of death issue, and the estate has perfected a cross-appeal.

We will deal with each of these issues separately: With respect to the first, the estate contends that the IRS was bound by its own procedures to limit its rejection of informal conference agreements to circumstances involving "clearly defined error." Rev.Proc. 60–24 (5) (.04), 1960 Cum.Bull. 60–24. While recognizing that the informal conference agreement is not binding on the IRS by statute such as a closing agreement authorized by § 7121 of the Internal Revenue Code or a compromise agreement authorized by § 7122 of the Code (26 U.S.C. §§ 7121, 7122), the estate contends that the failure to identify the "clearly defined error" prevents the IRS from rejecting the agreement. In examining the estate's argument, we note first that there is no requirement in the Treasury Regulations establishing the informal conference procedures that the IRS must identify or explain the error upon which it rejects an informal conference agreement. The Regulations, after providing for review of the informal conference agreements by regional commissioners, states:

"In certain circumstances, such as where substantial errors are found or where there is evidence of fraud or collusion, the regional commissioner has authority to reopen the case." Treas.Reg. 601.105(i).

Thus the estate's argument must stand or fall on the Revenue Procedure which provides:

"Occasionally, in cases where an agreement is reached at an informal conference, review of the case will disclose that the conferee's decision was *based on a clearly defined error* having a substantial effect on the tax liability. In such instances, if the change necessary to correct the error is adverse to the taxpayer, he will be offered another informal conference in the matter with the Conference Coordinator." Rev.Proc. 60–24(5) (.04), 1960 Cum.Bull. 60–24. (Emphasis supplied.)

Without reaching the question of whether the responses by the IRS to the estate's requests for identification of the "clearly defined error" were in fact sufficient, we must hold that the IRS was not required by the Revenue Procedures to identify the error for which the informal conference agreement was rejected. It is clear that the above quoted Revenue Procedure is directory, not mandatory, and the IRS's alleged

failure to sufficiently identify the error can not affect its right to assert a deficiency against the estate. *See* Geurkink v. United States, 354 F.2d 629 (7th Cir. 1965); Luhring v. Glotzbach, 304 F.2d 560 (4th Cir. 1962). Whatever deficiencies there may have been in the identification of the "clearly defined error" for which the agreement was rejected, the IRS was not foreclosed from rejecting the agreement by its own Revenue Procedures.

■ We turn next to the estate's argument that the rejection of the informal conference agreement violated the Administrative Procedure Act, thereby entitling the estate to the return of the deficiency paid. The estate relies on that portion of the Administrative Procedure Act which requires:

> "Prompt notice * * * of the denial in whole or in part of any written application, petition, or other request of any interested person made in connection with any agency proceeding. * * * [S]uch notice shall be accompanied by a simple statement of procedural or other grounds." 5 U.S.C. § 1005(d) (1964 ed.).

The estate contends that the consideration and rejection of the informal conference agreement was an "agency proceeding" for which the IRS was required to give a statement explaining the rejection. We again must disagree. Further examination of the Administrative Procedure Act makes it clear that the Act was not intended to apply to this type of case. The Act itself excepts from its application "any matter subject to a subsequent trial of the law and the facts de novo in any court." 5 U.S.C. § 1004 (1964 ed.). The rejection of the informal conference agreement was in fact a determination of the estate's tax liability, a matter subject to trial de novo in either the Tax Court or in the District Court. We therefore hold that the rejection of the informal conference agreement by the IRS did not violate the Administrative Procedure Act.

The final issue raised by the estate is that the IRS is estopped from rejection of the informal conference agreement after having accepted the benefits of the agreement, the "collateral agreement" whereby the estate and the beneficiaries agreed to a higher cost basis for certain securities held by the estate and the payment of $86,089.24 of additional estate tax and interest.

■ Without indulging in a protracted discussion of the few cases in which equitable estoppel has been applied against the government in tax cases, we hold there is no sufficient factual basis for imposing estoppel against the government in this case. The "collateral agreement" referred to above was expressly stated to be contingent upon " * * * acceptance by or on behalf of the Commissioner of Internal Revenue of a proposed settlement of the estate tax liability of the Estate of Helen Wade Greene * * *." In addition to this specific recognition that the informal conference agreement was subject to rejection by the Commissioner of Internal Revenue, the estate was informed by the IRS at the time of the rejection of the informal conference agreement that it was no longer bound by the "collateral agreement" and that it was free to withdraw the "collateral agreement." The estate apparently did not choose to do so, but this decision not to withdraw the "collateral agreement" cannot now be made the basis for a claim of estoppel against the government. With respect to the estate's payment and the government's acceptance and subsequent assessment of the additional estate tax and interest in the amount of $86,098.24, we find the following statement by the District Court pertinent:

> "The record indicates that none of the Form 890–B agreed tax deficiency of $77,781.53 plus interest of $8,307.71 was assessed upon the basis that Helen Wade Greene on August 15, 1957 transferred her property to the newly created trust in contemplation of death. On the contrary, as executors'

counsel stated in their letter of April 3, 1962

> this deficiency was based upon a determination that the gift made for the benefit of the decedent's daughter referred to above was not made in contemplation of death
>
> * * *

"Hence it is concluded that any claim of estoppel, in any event, should be limited to the Form 890–B aggregate deficiency of $86,089.24. The payment of that sum on January 3, 1962, none of which is attributable to the additional tax later assessed, may not be asserted as proof of the claim of estoppel now made to support recovery of the additional tax payment."

We therefore hold that the District Court correctly ruled that there was no basis on which to find the government estopped to repudiate the informal conference agreement, and we hold that the District Court correctly granted the government's motion for summary judgment on each of the last three counts of the refund suit.

### IV. Evidence of Post-Gift Health of the Decedent

We will now deal briefly with the final issue presented in this appeal. The government contends that in the second trial of the contemplation of death issue, the District Court erroneously admitted into evidence, over the government's objection, evidence relating to the decedent's post-gift health and the sudden and unexpected nature of her death. The government concedes that the admission of the evidence would not be sufficient alone to warrant reversal of the directed verdict in favor of the estate, but it does assert that the evidence was irrelevant and highly prejudicial to it in light of the stipulation that the decedent was not fearful of imminent death at the time of making the gift and that the death was sudden and unexpected.

We agree that the admission of this evidence would not alone require a reversal of the directed verdict, but in light of the conflicting rulings on the admissibility of this evidence in the two jury trials and the probability of a third jury trial on the contemplation of death issue, we feel obligated to offer some guidelines.

■■ In the trial of a contemplation of death issue the primary focus should be on the decedent's health and state of mind at and before the making of the gift to determine the motive for the gift. *See* United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 887 (1931); English v. United States, 270 F.2d 876 (7th Cir. 1959). Absent a contention by the government that the decedent was actually fearful of an imminent death at the time of the transfer, evidence of post-gift conditions such as the health, state of mind or sudden nature of the decedent's death would not be relevant. *See* Cronin's Estate v. Commissioner of Internal Revenue, 164 F.2d 561 (6th Cir. 1947). We therefore conclude that the admission of the evidence of the decedent's post-gift health and the sudden nature of her death was erroneous, and that in a subsequent trial of this issue such evidence should be excluded.

The judgment of the District Court in 19,175 granting the estate's motion for a directed verdict is reversed and the cause is remanded for a new trial consistent with the foregoing. The orders of the District Court in No. 19,176 from which the estate perfected an appeal are affirmed.

CELEBREZZE, Circuit Judge (dissenting).

The majority reverses the District Court's finding that there was a "complete lack of any evidence" favorable to the Government. I disagree.

The estate of the deceased marshaled strong evidence as to the motivation for the contested gift. The estate demonstrated that the deceased wished to supplement her daughter's income to enable her to continue the Wade family tradition of good works, United States v. Wells, 283 U.S. 102, 118–119, 51 S.Ct.

484

446, 75 L.Ed. 887 (1931); that the deceased engaged in a lifetime pattern of giving to her daughters and grandchildren; Routzahn v. Brown, 95 F.2d 766 (6th Cir. 1938), *cert. denied* 290 U.S. 641, 54 S.Ct. 60, 78 L.Ed. 557; that the gift was but a small fraction of her taxable estate and hence unlikely that she was motivated by tax considerations, Black v. United States, 68 F.Supp. 74, 78 (D.C.), aff'd. 164 F.2d 96 (6th Cir. 1947); that at the time of the making of the gift the deceased was in excellent health, Hull's Estate v. Commissioner of Internal Revenue, 325 F.2d 367, 368–370 (3d Cir. 1963); and that prior to the time of the gift the donee and her husband had solicited her mother's financial support in her charitable endeavors notwithstanding her own substantial funds, Gamble v. Commissioner of Internal Revenue, 33 B.T.A. 94, 95–97 (1935), *aff'd.* 101 F.2d 565 (6th Cir. 1939). No evidence was introduced to discredit this testimony.

The Government introduced no witnesses of its own to refute the compelling and credible evidence on behalf of the estate. In that a verdict must be directed where there can be but one reasonable conclusion, the estate is entitled to a directed verdict unless the Government raises some evidence upon its own behalf. As the United States Supreme Court has instructed in Brady v. Southern Rwy. Co., 320 U.S. 476, 480, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943):

> "When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by non-suit, directed verdict or otherwise in accordance with applicable practice without submission to the jury, or by judgment notwithstanding the verdict. By such direction of the trial the result is saved from the mischance of speculation over legally unfounded claims."

Each of the inferences made by the Government are unwarranted "speculations" under the *Brady* standard:

The Government speculates as to what might have been the motive of the decedent with "some familiarity with federal tax laws" when she made the gift, notwithstanding specific unrebutted evidence of a lifetime pattern of giving and specific life motivations.

The Government further speculates as to what the decedent might have "said at the time of the execution" of the gift to her daughter, notwithstanding direct testimony that the decedent had indicated her intentions to make the gift months earlier and spoke of it on three different occasions prior to its actual execution. At those times, prior to execution, the decedent indicated her desire to afford her daughter the funds which would aid her in further substantial charitable endeavors.

The Government also speculates as to the "simultaneous timing" of the formal execution of the will, revocable trust and challenged gifts. It does so notwithstanding unchallenged testimony that a re-execution of those instruments was necessitated at the time of the challenged gift, because Ohio law did not permit subsequent modifications to a pour-over trust. Ohio General Code § 10504–4, § 10504.47. *See,* Bolles v. Toledo Trust Co., 144 Ohio St. 195, 210, 58 N.E.2d 381, 157 A.L.R. 1164 (1944). In that both the will and the revocable trust required re-execution at the time of the gift, it was simply a matter of convenience to undertake all the formalities of execution and delivery at the same time.

Finally, the Government speculates as to the "similarity in the dispositive pattern" of the aforementioned instruments. The record clearly shows that the effect of all the substantive changes in the instruments was to hasten the time and amounts of money to be received currently by the decedent's daughter. This effect is singularly in accord with the stated purpose of the challenged gift—to further stimulate and encourage the decedent's daughter toward a lifetime of charitable endeavors, as was the decedent's family tradition.

The majority suggests that a verdict cannot be directed when the factual issue of "contemplation of death" is involved. I disagree. The facts in this case clearly rebutted the statutory presumption and overwhelmed the speculative inferences offered by the Government. I would affirm.