COMMERCIAL NATIONAL BANK OF PEORIA and Genevieve M. Wilson, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. P–CIV–76–78.

United States District Court, S. D. Illinois, N. D.

Sept. 8, 1977.

Edward F. Sutkowski, Peoria, Ill., for plaintiffs.

Terry G. Harn, Asst. U. S. Atty., Peoria, Ill., Richard G. Birchall and Vicki G. Cheikes, Trial Attys., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

936

## DECISION AND ORDER

ROBERT D. MORGAN, District Judge.

This suit was filed by the Commercial National Bank of Peoria and Genevieve M. Wilson, as executors under the Will of John Mahler Wilson, deceased, against the United States, to recover the sum of $30,643.54, which theretofore the plaintiffs had paid, upon their receipt of a deficiency assessment, for federal estate taxes. That assessment followed a determination by the Internal Revenue Service that certain gifts made by the decedent, in his lifetime, were made in contemplation of death. Following a bench trial, the cause is before the court for determination of the single issue whether such gifts, which were made less than three years prior to the decedent's death, were made in contemplation of death, within the meaning of Section 2035 of the Internal Revenue Code of 1954.

There is no dispute as to any part of the factual background of this controversy. Mr. Wilson, who died August 7, 1972, at the age of 71 years, left surviving him his spouse, Genevieve M. Wilson, and his daughter, Marilyn Skelly. He was also survived by two grandchildren.

Between the dates of June 8, 1970, and January 17, 1972, the decedent made several gifts of property to his spouse, his daughter and his grandchildren. The aggregate value of such gifted property was $345,-836.31, based upon the alternative evaluation date elected by the executors. The plaintiffs timely filed an estate tax return reporting an estate of $2,405,406.77, with which they paid estate taxes in the amount of $326,983.21. The Internal Revenue Service imposed a deficiency assessment, based upon its determination that such gifts were presumed to have been made in contemplation of death. Plaintiffs did, on July 15, 1975, pay that assessment in the aggregate amount of $30,643.54. Thereafter, they filed this suit to recover that payment.

At all material times, the decedent was in reasonably good health. He was suffering from no terminal illness and he had no knowledge of any infirmity which could reasonably be expected to lead to his imminent death. He led an active life, which included extensive travels during some five years just prior to his death.

The single issue before the court entails a factual determination whether the dominant motivation for the stipulated gifting was life oriented, as opposed to death contemplative. E. g., Cleveland Trust Co. v. United States, 421 F.2d 475, 479 (6th Cir. 1970). The legal principles imposed by the statute have long been settled by judicial decisions. The statute is designed to reach substitutions for testamentary disposition which are designed to avoid federal estate taxes. E. g., United States v. Wells, 283 U.S. 102, 116–117, 51 S.Ct. 446, 75 L.Ed. 867 (1931); Estate of Compton v. Commissioner of Internal Revenue, 532 F.2d 1086, 1087 (6th Cir. 1976). It creates a rebuttable presumption that any transfer of property made within three years prior to death without full consideration therefor was made in contemplation of death. E. g., Cleveland Trust Co. v. United States, supra at 478. The motive for any transfer coming within the presumption is placed in issue by the complaint. The taxpayer assumes the burden of proving by a preponderance of the evidence that the dominant motive for the transfer was life-oriented and designed to accomplish some lifetime purpose of the decedent. E. g., Estate of Compton v. CIR, supra at 1088; Berman v. U. S., 487 F.2d 70, 72 (5th Cir. 1973). In Landorf v. U. S., 408 F.2d 461, 472, 187 Ct.Cl. 99 (1969), the court said that the premises imposes the burden of coming forward with affirmative evidence of motives associated with life, as opposed to a purpose to avoid death taxes. The inquiry must be whether any life motives shown by the evidence were the dominant, impelling reasons for the transfers which the decedent made. E. g., Allen v. Trust Co. of Georgia, 326 U.S. 630, 635, 636, 66 S.Ct. 389, 90 L.Ed. 367 (1946); Bel v. United States, 452 F.2d 683, 687 (5th Cir. 1971). The apparent state of the health of the decedent at the time when the transfers were made is evidentiary only, not proof sufficient to show that a transfer was not in contemplation of death. E. g., Berman v.

*U. S., supra* at 73; *Bintliff v. U. S.*, 462 F.2d 403, 406 (5th Cir. 1972).

Mrs. Wilson, Mrs. Skelly, Joseph Skelly, and attorney Edward F. Sutkowski testified as witnesses for the plaintiff. Mr. Warren M. Webber, an officer of the Commercial National Bank, was the only witness called by the government. Additionally, there are before the court certain stipulated exhibits and certain government exhibits. The latter are comprised of certain correspondence and memoranda between Mr. Sutkowski, Mr. Webber and Mr. Wilson, which are contemporaneously related to the gifting program in issue.

Plaintiffs assert that the evidence adduced by them does prove that the gifting program begun by Mr. Wilson in June, 1970, was life oriented. They suggest that such evidence reveals that he desired the recipients of the gifts to have the income and enjoyment thereof in decedent's lifetime. More strongly they suggest that Mr. Wilson was concerned that his son-in-law, Joseph Skelly, had exhibited no interest in participation in financial management, and that the gifts, in trust, to Mrs. Skelly and to the grandchildren were designed to encourage an interest by Mr. Skelly in assuming a role in management of Mr. Wilson's property.

The government's position is that the evidence supports a finding that the gifting was a part of an overall scheme of estate planning which was designed to lessen the impact of death taxes.

Certain evidentiary comment seems desirable before the delineation of express findings of fact. There is no relevant pattern of gifting prior to the time of the operative facts herein. In 1954, decedent did make a gift, in trust, to his daughter in the approximate amount of $90,000. Additionally, he made annual wedding anniversary gifts in the amount of $500 to his daughter and son-in-law, commencing with the daughter's marriage in 1956. No other prior gifting is shown. Decedent did also execute a will in 1954.

Beginning in about 1968, the decedent initiated correspondence and discussions with officers of the Commercial National Bank related to the prospective management of his assets. In early 1970, the decedent consulted attorney Edward F. Sutkowski for the purpose of preparing a revocable trust for the management of his estate. On February 19, 1970, following a series of several conferences with the decedent and an analysis of his estate, Mr. Sutkowski apprised the decedent by letter as to his analysis of the estate and his recommendations for a revised estate plan. That letter recommended the immediate creation of a revocable living trust, the creation of irrevocable living gift-tax exclusion trusts for the benefit of his grandchildren, and the transfer of income-producing property and insurance policies to his wife and daughter. Those recommendations included an analysis of the tax consequences and benefits of the suggested program by a comparison of the potential gift tax impact with the anticipated impact of estate taxes. Included in that analysis was the advisement that any gifts made within three years prior to death would be presumed to have been made in contemplation of death, but that in such event there would be a good possibility of either overcoming that presumption or compromising any deficiency claim which might be asserted by IRS.

Sequentially thereafter, decedent executed and funded the John Mahler Wilson Revocable Living Trust on April 1, 1970. On May 13, 1970, decedent executed a last will and testament, revoking his will executed in 1954. On May 25, 1970, decedent executed and funded an irrevocable trust for the benefit of his grandchildren. On June 8, 1970, decedent made inter vivos gifts to his wife, daughter and grandchildren in the aggregate amount of $109,931. At Mr. Sutkowski's suggestion, he made additional inter vivos gifts to the same persons on December 23, 1971, in the aggregate amount of $230,492.81. On January 17, 1972, further gifts were made to the wife and daughter in the aggregate amount of $5,412.50. The wife, daughter and grandchildren were the beneficiaries and distributees under decedent's said last will.

The court recognizes that there is some credible evidence of life-oriented motivation in the gifting program.[1] The burden of proof which plaintiffs assumed is the production of a preponderance of evidence that the dominant motive for gifting was life oriented. Such evidence is deemed insufficient to sustain that burden, even if positive evidence to the contrary was ignored. When the latter evidence is considered, the evidence preponderates to show that in fact the dominant motivation for the gifting program was the reduction of estate taxes. When the testimony of Mr. Webber and Mr. Sutkowski is considered, with the exhibits in evidence, the finding is inescapable that the gifting program was one integrated part of a comprehensive estate plan, geared to the eventuality of death.

### Findings of Fact

1. All relevant facts stated in narrative form above are herein incorporated.

■ 2. The gifting program inaugurated by the decedent in early 1970 was a part of a comprehensive plan for a reordering of his estate for its preservation and protection upon the decedent's death. The decedent's primary motive in adopting that program was testamentary in its perspective. Any life-oriented considerations were wholly secondary.[2]

■ 3. The gifting program was in part motivated by decedent's desire to stimulate in his son-in-law, Joseph Skelly, an interest in financial management and investment, by the gifts to Mrs. Skelly and the grandchildren. That motivation cannot be construed as being life-oriented. What the decedent desired was that Mr. Skelly be prepared to manage the family assets, not during decedent's life, but after the decedent's death.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter.

2. The guiding legal principles hereinabove recited are herein concluded.

3. The plaintiffs have failed to sustain their burden of proof that the dominant motive for the gifting program was life-oriented. The defendant is entitled to a judgment in its favor.

IT IS ORDERED, accordingly, that judgment is entered dismissing the complaint.

---

1. Neither Mrs. Wilson nor Mr. Skelly had any personal knowledge as to Mr. Wilson's motivation for the gifting. Both Mr. Sutkowski and Mrs. Skelly testified as to facts and conversations which could be indicative of life-oriented motivation, but each of those witnesses testified that he was aware of intentions and motivations on the part of Mr. Wilson related to comprehensive estate planning.

2. The court is cognizant of the fact that the aggregate value of the gifts involved is a rather nominal percentage of decedent's total estate. That evidentiary fact, though significant, must be considered in the light of all the evidence. The evidence reflects the absence of any significant gifting program on decedent's part prior to early 1970, the reordering of his estate plan and the adoption of a gifting program in that year, which involved gifts to persons who would have been expected to be the recipients of his property upon his death, the fact that decedent was then cognizant of, and did contemplate, the anticipated impact of estate taxes upon his rather substantial estate, and the fact that death did intervene within less than three years after the gifting program was initiated. The court need not speculate that the comparative percentages were affected by the relatively brief period which intervened between May, 1970, and the death in August, 1972. It is only noted that those percentages are paled to insignificance in the light of the evidence that the gifts were, indeed, a part of a comprehensive testamentary plan which the decedent inaugurated in 1970.