AMERICAN TRUST & BANKING CO. *v.* TWINAM *et al.*

*(Knoxville,* September Term, 1948.)

Opinion filed December 11, 1948.

Whitaker, Hall & Haynes, of Chattanooga, for Mrs. Elizabeth A. Twinam.

Miller, Martin, Hitching & Tipton, of Chattanooga, for American Trust & Banking Co. executor.

Morgan & Morgan, of Chattanooga, for Mrs. Daisy M. Twinam.

Charles A. Noone, of Chattanooga, for Mrs. Virgina T. Smith.

W. A. Wilkerson, of Chattanooga, guardian *ad litem*.

Mr. Justice Burnett delivered the opinion of the Court.

Two questions are presented by this appeal for our solution, namely; (1) Has the widow, Elizabeth A. Twinam, waived her statutory right to the net proceeds of life insurance on the life of her deceased husband (payable to his ''executors, administrators or assignees'') by a marriage settlement with him wherein she ''waives all rights to and interest in the property and estate'' when no specific mention is made of said insurance either in said settlement or in the will of said deceased husband; and (2) (if one above is answered in the negative) should a mortgage debt, to which these policies of life insurance were assigned as collateral security, be paid out of the proceeds of said insurance before other assets or prop-

erty of the deceased is applied to the payment of said mortgage debt.

The "Statement of The Case" as found in the brief of the guardian *ad litem* concisely and fairly states the issues and results below in these words:

"This case involves the disposition of $40,000.00 proceeds of two life insurance polices on the life of J. Courtenay Twinam, deceased. These polices had been assigned to secure an indebtness to the Penn Mutal Life Insurance Company in the original principal amount of $35,000.00. There was about $31,000.00 balance at the time of Twinam's death. This indebtedness was also secured by a mortgage on the Louise Terrace Apartments, a valuable apartment building in Chattanooga. The assignments were in full force and effect at the date of the insured's death, though subsequently thereto the Company expressed a willingness to release the assignments. No disposition is made of these policies or their proceeds by the will of deceased, other than a direction that the mortgage contract with the Penn Mutual be carried out.

"A marriage settlement agreement was entered into between said Twinam and his wife (now his widow) whereby he made certain provisions for her and in consideration thereof she waived and released her interest in his property and estate. In his will he stated that no provision was made therein for her because of the marital contract which made adequate provision for her, and in which she released all interest in his general estate.

"This was the situation relative to the proceeds of the policies when Twinam died. He left surviving him his widow, the appellant, and three children, all by former marriages. The widow takes the position, first, that the marriage settlement agreement does not bar her from

participation in the proceeds of the policies; and, second, that the proceeds should not be used to discharge the balance of the debt owed to the Penn Mutual Life Insurance Company. Her conclusion is that she is entitled to one-fourth of the gross amount of the policies. The other individual parties insist that the marriage settlement does bar the widow from any share in the proceeds of the policies and that the balance of the debt to the insurance company should be paid out of the proceeds of the policies. Their conclusion is that the surplus after payment of the debt should be divided equally between the three children. The complainant insists that the proceeds of the policies should be used to pay the balance of the debt. It has abandoned the insistence in the original bill that the proceeds of the policies pass under the will into the testamentary trust, and assumes a neutral position as to whether the widow should participate.

"The decree of the Chancellor was that the marital agreement was binding and barred the widow from participation in the policies and ordered the executor to pay the balance of the debt out of the proceeds of the policies and to distribute the surplus equally to the three children. The widow has appealed and has assigned errors."

It is provided by statute, Code Section 8456: "Any life insurance effected by a husband on his own life shall, in case of his death, inure to the benefit of his widow and children; and the money thence arising shall be divided between them according to the statutes of distribution, without being in any manner subject to the debts of the husband."

The above quoted section exempting life insurance has been construed by this Court in numerous cases where creditors have sought to have satisfaction of their claims

out of the proceeds of the life insurance, and it has been consistently held that the act in no wise limited the authority of the husband to control policies of insurance upon his life, where the same are payable to his estate, such insurance is the property of the husband and subject to his disposition, either during his lifetime or by will. *Rison* v. *Wilkerson*, 35 Tenn. 565, 569; *Williams* v. *Carson*, 68 Tenn. 516; *Nashville Trust Co.* v. *First Nat. Bank*, 123 Tenn. 617, 134 S. W. 311; *Chrisman* v. *Chrisman*, 141 Tenn. 424, 210 S. W. 783.

██ Notwithstanding his absolute control and authority over the policies of insurance on his life made payable to his estate, the proceeds of the same do not pass by will in the absence of the use of apt words clearly indicative of such intention, as held in *Cooper* v. *Wright*, 110 Tenn. 214, 75 S. W. 1049, and reiterated in any number of subsequently reported cases. *Adams* v. *Garaway*, 179 Tenn. 93, 162 S. W. (2d) 1086.

██ It is apparent from *Chrisman* v. *Chrisman; Williams* v. *Carson; Rose* v. *Wortham*, 95 Tenn. 505, 32 S. W. 458, 30 L. R. A. 609, and all other cases that apt words must be used by the testator before the insurance will be taken out of the exempt provision of the statute and pass under the will to others. This wise rule was to protect the widow and children, who are usually dependent upon the husband, and to enable the husband or father to provide a fund after his death for his family without regard to the size or solvency of the estate. This is a rule of construction, and general terms, however broad, will not pass the insurance to others or subject it to the claims of creditors.

██ It must be borne in mind that Section 8456 exempting life insurance effected by a husband on his own life

to the widow and children, and directing its distribution, is unlike the general exemption law, in that under Section 8456 the husband is the owner of the insurance made payable to himself or to his executor or administrator and has the right to dispose of the same in his lifetime or by his last will, while with respect to exempt property under the general exemption laws the testimony power has been limited in this state in regard thereto, and although the husband's will purports to dispose of property exempt from execution during his lifetime, it has been held said exempt property does not belong to the estate of the deceased husband and as such cannot pass under his will as against the right of his widow. Will or no will, the widow is entitled to the exemptions, that is, such property as is exempt from execution in the hands of the husband during his lifetime, and upon his death, testate or intestate, the personal representative has no right to sell the property and appropriate the proceeds to the creditors of the estate. *Rowlett* v. *Rowlett*, 116 Tenn. 458, 95 S. W. 821.

In *McAdams* v. *McAdams*, 177 Tenn. 67, 146 S. W. (2d) 140, this Court held that a contract to waive homestead and year's support exemptions, even if entered into before marriage, would be void as against public policy. And for the same reasons her prenuptial contract not to dissent from the will of her husband was held void in the case of *Shirley* v. *Shirley*, 181 Tenn. 364, 181 S. W. (2d) 346. The basic reason for these holdings is bottomed on the fact that " 'laws enacted from considerations of public concern, and to subserve the general welfare, cannot be abrogated by mere private agreement.' " *Mills* v. *Bennett*, 94 Tenn. 651, 30 S. W. 748, 749, 45 Am. St. Rep. 763.

It is not necessary for us to go that far in the instant case. These holdings and the reasons therefor are applicable in principle here.

This Court in the case of *Agee* v. *Saunders*, 127 Tenn. 680, 685, 157 S. W. 64, 65, 46 L. R. A. (N. S.), 788, held that the years support could not be set apart out of proceeds of insurance on a husband's life, payable to his estate, because the fund was exempt to the widow and children. Mr. Chief Justice M. M. NEIL, writing that opinion, reasoned there, and the same reasoning is equally applicable here, that: "This refers to certain articles of personal property specified in our statutes for the benefit of heads of families. No reason appears why property of this class might not be invaded for the purpose of setting aside the year's support equally as well as an exempt insurance fund. The effect of holding that either class of exemptions could be so used would be to reduce exemptions to two classes, while our statutes provide for three, viz., the year's support, the items of exempt personal property, and the insurance fund. If such construction were permitted, it would always be insisted by creditors that the year's support should be taken out of one or the other of the two latter classes of exemptions, thereby causing two to coalesce and thus serve the creditors at the expense of the widow and children—a kind of marshaling in favor of creditors against the beneficiaries under our exemption statutes, thereby defeating the letter as well as the spirit of the statute. This would not be permitted in a court of equity, if that court could obtain control of the property in any particular case; but in most instances the matter would rest wholly within the jurisdiction of the probate court, where, under the operation of the rule insisted on, there would necessarily occur daily evasions of the exemption laws."

In the case now before us no mention is made of the insurance either in the marriage settlement or in the will of the deceased. The pertinent part of the marriage settlement is:

"In consideration of the foregoing provisions, the second party (Elizabeth) hereby releases and waives all rights to and interest in the property and estate of the first party (Twinam), including right of inheritance in personal and real property, years support, homestead and dower."

The pertinent portion of the decedent's will is:

"I have made no provision in this will for my present wife, Elizabeth A. Twinam, because of a marital contract between us which makes adequate provision for her, and in which she releases all interest in my general estate."

"The mortgage contract with the Penn Mutual Insurance Company shall be carried out and all payments of interest and principal shall be made."

██ ██ For the reasons heretofore given we can see no reason why the net proceeds of this insurance should not go to this widow. The insured did not direct to the contrary in the policy, or by assignment, or by his will or in any other mode by the use of apt words for that purpose. It seems perfectly clear to us that the same reasoning applies equally to any purported waiver by the wife. As said in *American Trust Co.* v. *Sperry*, 157 Tenn. 43, 5 S. W. (2d) 957, 959, "No such intention may be inferred from general expressions or provisions. Such a purpose 'must be explicitly declared.' " And, "Apt words must be used indicating, not an intention only to equalize the funds among this preferred class, his wife and children, but an intention to apply the funds to debts and expenses of his estate." Even though the last quoted language

had application to a different factual situation from that of the instant case, we think the language equally applicable to the factual situation of the case now before us.

The appellees argue that this Court having held in *Gamble* v. *Fulton*, 166 Tenn. 66, 59 S. W. (2d) 504, "the proceeds of an insurance policy payable to the estate or to the executors, administrators or assigns of the insured constitute 'property' of the insured" that therefore the waiver herein waiving "all rights to and interest in the property" of the deceased necessarily covered the net proceeds of this insurance fund. The basis for this holding is that the widow claimed dower and homestead in the property of her deceased husband after his estate had become insolvent. He left a will under which he willed her by apt and unmistakable terms a policy of insurance on his life. To justify her claim, she not having dissented from the will, it was necessary that she reply on subsection 2 of Section 8358 of the Code, under which she could sue for dower without a formal dissent.

It was under such circumstances that the Court pointed out that she received some $4,000, by reason of the will, of insurance money, and that having thus taken this money under the will, free from his debts, the provision for her had not wholly failed. Under such circumstances the insurance fund was "property" within the meaning of the requirement of Code Section 8358 relied on. In other words by the will in question this widow was given a fund where, if "apt words" had not been used, would have gone to the children as well as the widow.

Merely because this fund is "property" will not, without more, divert it from the channel into which the statute has placed it. It is not "property" in the sense that it is liable for his debts, unless he elects to make it subject

to the claims of others, not the preferred class, by "apt words". This fund is not part of the general estate. In the absence of "apt words" it goes by virtue of the statute to the preferred class.

The deceased in his life time assigned these insurance policies to the Penn Mutual Insurance Company as a part of a mortgage contract with that company who had made him a loan, also taking a first mortgage, on certain real estate of the insured. The pertinent portions of these assignments are: "Assignor, for value received, do hereby assign, transfer and set over unto The Penn Mutual Life Insurance Company . . . all right, title and interest in and to the said policy and all renewals thereof, and any policy into which said policy may be converted,"

Also: "Said policy is to be held as collateral security for an indebtedness of said assignor to the amount of assignee's demands subsisting against the assignor at the death of the insured or at the time of the prior surrender or maturity of said policy, the balance of the proceeds thereof, if any, to be for the same benefits and payable to the same person or persons named in said policy as therein provided."

In the other assignment, Exhibit 4, it is said: "For value received each of the undersigned hereby assigns, except as provided in paragraph 2 below, all his right, title and interest in the above policy, including any supplemental agreements made a part thereof, to The Penn Mutual Life Insurance Company, hereinafter called 'company' as collateral security for the certain obligation," etc.

Paragraph 2 provided that the insured should have the right to collect disability income, change the beneficiary,

take optional modes of settlement, and such matters, all immaterial here.

Then, in paragraph 4 it was provided: "Upon maturity the policy as a death claim or as an endowment the Company may apply the net proceeds or a part thereof in payment of or on account of unpaid principal, whether or not then due, or any amount due or accrued under the obligation or the accompanying mortgage or trust or loan deed."

The insured had this right. The widow had no vested interest in this insurance. Her rights did not accrue until the death of the insured and these rights were then subject to any assignment the insured took in his life time or by the terms of his will by the use of "apt words". This right to assign or pledge is superior to the right of the statutory beneficiaries; but the latter may be called the residuary right, and it constitutes a legal claim upon all the title that has not been disposed of in the exercise of the superior right. *Mellows* v. *Mellows*, 61 N. H. 137. The assignments were absolute, giving Penn Mutual the right to apply the proceeds of these policies to the payment of their debt. In *Nashville Trust Co.* v. *First National Bank*, 123 Tenn. 617, 626, 134 S. W. 311, 314, it was said: "The theory of appellants was that the policy was pledged. The fact was that it was absolutely assigned, leaving no vestige of legal right to it or the proceeds of it in the decedent. So it was, from the date of the assignment, during his life and at his death. The interest he had in it from the time of the assignment, during his life and at his death, was an equity, pure and simple, and not a legal right. . . . If he, during life, had sought to recover the policy, and to cancel his absolute assignment of it without paying these debts, he

would have been repelled by a court of equity on the ground that he who would have equity must do equity. His wife and children can have no higher rights than he. . . . They are clothed only with his equity, and as he would have been bound, so they are bound, to do equity.''

The deceased (insured) provided in his will that ''The mortgage contract with the Penn Mutual Insurance Company shall be carried out and all payments of interest and principal shall be made.'' These assignments and assigned policies were a part of the ''mortgage contract'' as much so as the note and deed of trust. This being true, it necessarily follows that the life insurance money pledged as security on the loan must be applied to that end.

From what has above been said we are satisfied that the deceased (insured) intended for the loan to be paid out of the proceeds of the assigned policies. In the case of *Third Nat. Bank et al.* v. *Hall*, Tenn. App., 209 S. W. (2d) 46, (*Certiorari* denied by this Court) the opposite result was reached but the reasoning in reaching the result was the same as here used. In other words the facts of that case warranted a different conclusion from the facts of the instant case.

The result is that the widow Elizabeth A. Twinam, is entitled to share with the children in the proceeds from these insurance policies over and above the amount necessary to pay off the mortgage loan for which these policies were assigned.

All concur.