In re J. David EPSTEIN and Cindy R. Epstein, Debtors.

Bankruptcy No. 3–82–01217.

United States Bankruptcy Court, E.D. Tennessee.

Dec. 23, 1982.

John A. Walker, Jr., Knoxville, Tenn., for Robert T. Whitehead, Larry R. Graves and Donald L. Garrett.

J. David Epstein, pro se.

## MEMORANDUM AND ORDER ON APPLICATION FOR ORDER PROHIBITING USE OF CASH COLLATERAL

CLIVE W. BARE, Bankruptcy Judge.

The singular issue addressed in this Memorandum and Order is whether the debtors in possession (the "debtors") should be prohibited from using cash collateral from the rental of apartment units, which the debtors own subject to five separate deeds of trust. "Cash collateral" is defined in 11 U.S.C.A. § 363(a) (1979) as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest."

David and Cindy Epstein, husband and wife, filed their chapter 11 petition on August 16, 1982. Their principal asset is the real property ("the property"), situated at 5540 North Broadway in Knoxville, Tennessee, which they estimate to have a fair market value of $585,000.00. Two apartment buildings consisting of twenty-three (23) units are situated on the property. Donald L. Garrett, Robert T. Whitehead, and Larry R. Graves (the "applicants"), mortgagees of this property, have requested the court to deny to the debtors the use of income from apartment rentals.

The property is subject to three separate deeds of trust from Warren P. Duggan to Knox Federal Savings and Loan Association, executed approximately ten (10) years ago, a fourth deed of trust in favor of Duggan's estate, and the applicants' fifth deed of trust. Duggan conveyed the property to another party. The applicants eventually became the owners of the property. The mortgage debt owed to Knox Federal was assumed by the applicants on December 30, 1977. Thereafter, on June 8, 1981, the applicants conveyed the property to Roger H. Artz [1] and David Epstein. Schedule A–2 of the debtors' petition indicates that the debtors acquired Artz's interest in the property on July 5, 1981.

The debtors' schedules, filed on August 16, 1982, reflect that the property is subject to the liens of the following mortgagees with priority in the order of the identity of the mortgagees:

1. Artz acquired a 9/10ths interest in the property, and David Epstein acquired the remaining undivided 1/10th interest.

| MORTGAGEE | UNPAID BALANCE SECURED BY MORTGAGE |
|---|---|
| Knox Federal Savings and Loan Association | $138,518.00 |
| Estate of Warren P. Duggan | 96,273.00 |
| Donald L. Garrett, Larry R. Graves, and Robert T. Whitehead | 155,209.00 |
| | $390,000.00 |

The applicants' fifth deed of trust against the property is actually a wrap-around mortgage. Hence, the entirety of the monthly mortgage payments is supposed to be paid by the debtors to the applicants, who in turn submit payments to the first and second mortgagees. The applicants are personally liable for the payments to the first and second mortgagees but the debtors are not.

The debtors monetarily defaulted when they failed to pay the monthly payments for August and September 1982. At the hearing on September 23rd, the debtors stated that they would resume making monthly payments in the amount of $3,250.00 on November 1, 1982.

The applicants have made the following averments in requesting that the debtors be prohibited from using cash collateral:

1) cash collateral has been used by the debtors in violation of Code § 363(c)(2), since the applicants neither consented to nor has the court authorized use of cash collateral by the debtors;

2) the debtors have violated the provisions of Code § 363(c)(4) since they have neither segregated nor accounted for cash collateral in their custody;

3) the debtors have paid prepetition debts and personal living expenses with cash collateral without authorization.

4) the interest of the applicants is inadequately protected.

In response, the debtors insist their use of cash collateral enhances and maintains the value of the applicants' security and that the applicants have an adequate equity cushion. The debtors further insist that

their continued use of cash collateral is in the best interest of the estate. They admit that they have paid some prepetition obligations. They do not deny the averred use of cash collateral for living expenses, but they assert that gainful employment has been obtained which will sustain them henceforth.

■ Rental income from a debtor's mortgaged property is "cash collateral," within the meaning of that term as found in 11 U.S.C.A. § 363 (1979), provided that an entity other than the debtor has an interest in the rents. *In re Gaslight Village, Inc.,* 6 B.R. 871, 875 (Bkrtcy.D.Conn.1980). The legislative history of § 363(a) eliminates any doubt whatsoever on this issue.

Subsection (a) defines "cash collateral" as cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest, such as a lien or a co-ownership interest. The definition is not restricted to property of the estate that is cash collateral on the date of the filing of the petition.... To illustrate, rents received from real property before or after the commencement of the case would be cash collateral to the extent that they are subject to a lien. S.Rep. No. 989, 95th Cong., 2d Sess. 55, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5841.

■ The deed of trust held by the applicants entitles them to receive rents in the event of default. Since the debtors admit their monetary default, the applicants have an interest in the rents from the property. Thus, the rental income is cash collateral.

■ Section 363(c) of the Bankruptcy Code enacts in apposite part:

(1) If the business of the debtor is authorized to be operated under section 721, 1108, or 1304 of this title and unless the court orders otherwise, the trustee [2]

2. The debtors in possession, pursuant to 11 U.S.C.A. § 1107 (1979) are vested with the same rights, except the right to compensation

under § 330 of the Code, and powers as a trustee in a chapter 11 proceeding. Thus, they are authorized to operate the debtor's business,

... may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents, or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

.   .   .   .   .

(4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.

The debtors have violated the provisions of § 363(c)(2) since the applicants have neither consented to the use of cash collateral nor has the court authorized such use.[3] However, it is not established in the record before the court that they have violated the provisions of § 363(c)(4). It is the testimony of the debtors that there is a standing account, of some time, with Knox Federal Savings and Loan Association for transactions related to the property.[4] Operating reports itemizing income and expenses have been filed by the debtors.

■ The court observes that the applicants have not disputed the debtors' representation that the fair market value of the property is $585,000.00. Since the indebtedness secured by the property is only $390,000.00, there appears to be a substantial equity cushion. Although an equity cushion

in and of itself may suffice as adequate protection entitling a debtor to the continued protection of an automatic stay, *In re Gaslight Village, Inc.,* 8 B.R. 866, 871 (Bkrtcy.D.Conn.1980), an equity cushion does not automatically entitle a debtor in possession to use cash collateral.

[T]his court is satisfied that the Debtor should not be permitted to use cash collateral without making some payments to the secured party just because it has, at the commencement of the case, a meaningful equity cushion in the collateral. To accept this proposition would mean that a debtor may freely use cash collateral until the collateral is reduced to the amount of indebtedness during which time the secured party is deprived of income, for which it bargained when the loan was granted.

*Matter of Earth Lite, Inc.,* 9 B.R. 440, 444 (Bkrtcy.M.D.Fla.1981).

The oversecured creditor in the *Earth Lite* case, Sun Bank, enjoyed both a substantial equity cushion and the personal guarantee of insiders, associated with the debtor, secured by property having a net equity of more than $150,000.00. The court permitted the debtor to use cash collateral to make the agreed monthly payments and to satisfy unpaid arrearages owing to Sun Bank. Payment to Sun Bank was clearly a necessary predicate to the use of cash collateral by the debtor.

■ In the instant case, the debtors in possession promised to resume making monthly payments to the applicants in the required amount of $3,250.00 on November 1, 1982.[5] The court has no hesitancy what-

unless ordered otherwise. *See* 11 U.S.C.A. § 1108 (1979).

3. The court has treated the debtors' Motion to Oppose Applications for Appointment of Trustee, Adequate Protection, and Order Prohibiting Use of Cash Collateral, filed on September 20, 1982, as a request for authorization to use cash collateral.

4. Messrs. Garrett, etc. make some further allegations to the effect that Debtors do not have a separate tax account and withhold amounts from the wages of employees. That is because Debtors have no employees and

pay no wages, which Messrs. Garrett, etc. know very well. They also allege that funds are not deposited in an approved bank; again, Debtors have testified that they deposit rentals and pay bills from the Property's standing account of some time with Knox Federal Savings and Loan Association, Account # 185000183.

Debtors' Motion to Oppose Application for Appointment of Trustee, Adequate Protection, and Order Prohibiting Use of Cash Collateral at 4.

5. The operating report for October 1982 reflects a net profit of only $1,265.12 prior to

soever in authorizing the debtors in possession to use cash collateral to make current and delinquent payments to the applicants. The equity cushion enjoyed by the applicants in conjunction with a resumption of the payment which they are entitled to receive apparently adequately protects their interest at the present time.

Although, as a general proposition, cash collateral may be used to maintain and preserve security property, *In re Pine Lake Village Apartment Co.,* 16 B.R. 750 (Bkrtcy. S.D.N.Y.1982), a debtor in possession is not at liberty to use postpetition cash collateral to pay prepetition obligations. The debtors admit they have made payments on prepetition obligations. Such payments may be avoidable postpetition transfers, under Code § 549, recoverable under § 550 of the Bankruptcy Code. *See Matter of B & W Enterprises, Inc.,* 19 B.R. 421 (Bkrtcy.D.Idaho 1982).

The use of the cash collateral from the applicants' security property is critical to the successful reorganization of the debtors.[6] Their use of apartment rental income, however, must be limited to actual, necessary expenses incurred in the operation of the apartments and payments to the applicants to satisfy current and delinquent obligations, provided that any profits after those payments may be used as authorized by the court or provided by law. Failure of the debtors to make the $3,250.00 monthly payment owed to the applicants may result in the loss of authorization to use cash collateral.

It is therefore

ORDERED, ADJUDGED AND DECREED that the Application For Order Prohibiting Use of Cash Collateral is denied. The cash collateral from the apartment rental income may be used to pay actual, necessary expenses incurred in the ordinary course of business of operating the apartment and to make current and delin-

quent payments owing to the applicants. Any excess remaining after the aforementioned payments may be used as authorized by the court or as otherwise provided by law.

payment of the $3,250.00 payment owed to the applicants.

**6.** The debtors filed a proposed disclosure statement and a proposed plan of reorganization on

December 15, 1982. A hearing on adequacy of the disclosure statement is scheduled for January 13, 1983. 11 U.S.C.A. § 1125 (1979).